UNITED STATES, Appellee,

v.

Juan Jose MIRANDA–SANTIAGO,
Defendant–Appellant.

UNITED STATES, Appellee,

v.

Carmen PACHECO–RIJOS, a/k/a
Fina, Defendant–Appellant.

UNITED STATES, Appellee,

v.

Ismael RIVERA–DeCELIS, a/k/a Macho,
Defendant–Appellant.

Nos. 95–1301, 95–1302 and 95–1304.

United States Court of Appeals,
First Circuit.

Heard April 2, 1996.

Decided Sept. 19, 1996.

Edward E. Parson, Washington, DC by Appointment of the Court, on brief for appellant Juan José Miranda–Santiago.

Norberto Colón by Appointment of the Court, for appellant Carmen Pacheco–Rijos.

Harry R. Segarra, Puerto Neuvo, PR by Appointment of the Court, for appellant Ismael Rivera–DeCelis.

Miguel A. Pereira, Assistant United States Attorney, Hato Rey, PR, with whom Guillermo Gil, United States Attorney, and José A. Quiles–Espinosa, Senior Litigation Counsel, were on brief, for appellee.

Before SELYA and CYR, Circuit Judges, and GERTNER,[*] District Judge.

GERTNER, District Judge.

In this consolidated appeal, we consider challenges to the sentences of Ismael Rivera–DeCelis, Carmen Pacheco–Rijos and Juan José Miranda–Santiago. In September of 1994, these defendant-appellants, along with twenty-one co-defendants, pled guilty to participation in a drug distribution conspiracy spanning over a year and involving trafficking in crack cocaine, cocaine, heroin, and marijuana, as well as using or brandishing firearms, and engaging in carjacking to facilitate their drug trade.

The defendants were arraigned in two groups, pled guilty before the same judge and were sentenced before him by early 1995.

Ismael Rivera–DeCelis contends that his guilty plea was entered in violation of Rule 11 of the Federal Rules of Criminal Procedure, and that the district judge erred in calculating his sentence. *See* U.S.S.G. § 1B1.3. He did not press the first point below. We find that the plea colloquy in his case conformed with Fed.R.Crim.P. 11 and that the sentence calculations with respect to him were not in error. Accordingly, we affirm his conviction and sentence.

Carmen Pacheco–Rijos challenges her sentence, arguing that the district court erred in imposing the mandatory minimum required for her offense. Her attack is based on her claim that she met the conditions set forth in the "safety valve provision" of the Sentencing Guidelines. *See* 18 U.S.C. § 3553(f); U.S.S.G. § 5C1.2. We find the record inadequate to justify the district court's decision not to grant relief. Accordingly, we vacate the sentence and remand the case for the purpose of allowing the district court to revisit this issue and to clarify the record by filing supplemental findings. In the event that the court finds its initial calculation in error, it should so identify and return, as well, to the issue of other adjustments, if appropriate, under the Guidelines.

Juan José Miranda–Santiago also attacks his sentence, arguing that the sentencing court erred, as a matter of law, by failing to grant a two-level downward adjustment based on a finding that the defendant was a "minor participant" in the criminal activity. *See* U.S.S.G. § 3B1.2(b). We find inadequate support in the record for the court's conclusion that a downward adjustment was inappropriate. We vacate this sentence and remand the case to the district court for the purpose of having the court file supplemental findings with respect to appellant Miranda–Santiago's role in the offense. In the event that the court finds its computation in error, it should include such a determination in its findings.

## I. BACKGROUND

We begin with an overview of events involving the three appellants.[1]

On March 9, 1994 a grand jury returned an indictment against 19 defendants, including

---

[*] Of the District Court of Massachusetts, sitting by designation.

[1]. We consider the facts as set forth in the uncontested portions of the Presentence Report ("PSR") of each defendant, the information to which each defendant pled guilty, and the sentencing hearing transcripts. *E.g., United States v. Grandmaison,* 77 F.3d 555, 557 (1st Cir.1996); *United States v. LeBlanc,* 24 F.3d 340, 342 (1st Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 250, 130 L.Ed.2d 172 (1994).

appellants Pacheco–Rijos and Miranda–Santiago, charging them with conspiracy to distribute drugs, and with using firearms in connection with a drug offense. Apparently, the conspirators hid drug substances, firearms and proceeds of drug sales in specific locations, guarded by members of the conspiracy. Members of the conspiracy were also encouraged to commit—and committed—"carjacking" offenses; armed, they would steal cars and then use the vehicles to transport drugs back to their storage locations.

The indictment and the PSRs adopted by the appellants and the district court detailed a criminal enterprise with a strongly hierarchical structure; some of the accused controlled the operation, while others served as drug runners and bodyguards. A superseding indictment, returned on May 12, 1994, named five additional defendants, including appellant Rivera–DeCelis.

When arraigned, each defendant entered a plea of not guilty. In September of 1994, Rivera–DeCelis, Pacheco–Rijos and Miranda–Santiago, among others, offered to change their pleas with respect to certain charges. After each plea colloquy, conducted individually, the court accepted the defendants' pleas. Each was separately sentenced.

## II. DISCUSSION

We consider the facts with respect to each defendant and his or her legal challenges in turn.

### A. *Ismael Rivera–DeCelis*

#### 1. Facts

Appellant Rivera–DeCelis was alleged to have been involved in several phases of the drug conspiracy detailed in the superseding indictment. He was charged in Count One with distributing not less than fifty grams of cocaine base, an amount of not less than five kilograms of cocaine, an amount of not less than one kilogram of heroin, and some amount of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) & 846. Counts Three, Four and Five charged him with possessing and brandishing various firearms in connection with his drug trafficking, in violation of 21 U.S.C. § 924(c)(1).

After an initial plea of not guilty, on September 8, 1994, Rivera–DeCelis offered to change his plea to guilty to Count One's charge that he acted in violation of 21 U.S.C. § 846, and Count Three's charge that he acted in violation of 18 U.S.C. § 924(c)(1). The plea agreement was entered into under Fed.R.Crim.P. 11(e)(1)(c).[2] It provided that the defendant would be held accountable at sentencing for the distribution of no less than 15 but no more than 50 kilograms of cocaine, resulting in a base offense level of 34. *See* U.S.S.G. § 2D1.1(a)(3). The parties also agreed that the defendant was entitled to a three-level downward adjustment for acceptance of responsibility, under U.S.S.G. § 3E1.1(b)(1) & (2), reducing his offense level to 31. The parties further defined the term of imprisonment: In light of the ten year mandatory minimum sentence facing Rivera–DeCelis under 21 U.S.C. § 841(b)(1)(B), and a criminal history category of III, they stipulated to a 139 month term of confinement on Count One to be followed by a 60 month term on Count Three.[3]

During the plea colloquy, the district judge directly addressed Rivera–DeCelis. He explained each charge, detailing, among other things, the time frame of the conspiracy in which the defendant allegedly was involved (roughly from January of 1993 through March of 1994), the elements of the offenses and the burden the government would have if

---

**2.** Rule 11(e)(1)(C) of the Federal Rules of Criminal Procedure authorizes plea agreements which stipulate specific sentences to be imposed. In those circumstances, a district court may either accept the agreement in toto or reject it, giving the defendant the opportunity to withdraw the plea entirely. Fed.R.Crim.P. 11(e)(4); U.S.S.G. § 6B1.3(ps).

**3.** The 139 month prison term on Count One appears, from the record before us, to have been

it tried to prove its case.[4] He also explained to the defendant the sentences he faced and the consequences of his plea, inquired about coercion and made sure the defendant understood the particular strictures of a plea entered into under Rule 11(e)(1)(c). The defendant agreed to the facts presented in the indictment, without asserting that there were any temporal limits to his personal involvement in the conspiracy.

Turning to the factual basis of the charges, the judge asked Rivera–DeCelis whether the defendant was "recognizing [his guilt] ... for the drug conspiracy participation and also for the weapons or firearms count," and whether he acknowledged the punishment he could face. Rivera–DeCelis answered in the affirmative to both questions.[5]

At sentencing, the defendant challenged the drug amount attributed to him in the PSR. Notwithstanding his earlier admissions, Rivera–DeCelis asserted that he was only involved in the conspiracy for three months and that the amount of cocaine reflected in the plea agreement was greater than the amount he could reasonably have foreseen would have been part of the conspir-

acy during his membership in it. The government cast doubt on the short duration of Rivera–DeCelis' involvement, noting that he was pictured holding a gun and serving as a bodyguard for one of the conspiracy's leaders. Logically, the prosecutor argued, such a responsibility would not devolve to a new and marginal member of the organization. In any event, even within a 90 day period, the government contended, the daily quantities of drugs sold as part of the conspiracy would result in a drug offense level of over 34.

The district judge did not accept the defendant's characterization of his involvement and rejected his challenge. The judge noted that the benefits of this plea agreement to the defendant were substantial, since, for instance, no amount of crack cocaine was attributed to the defendant, a drug "which all of them were dealing ... without a doubt." Accordingly, the court adopted a base offense level of 34 and granted the defendant a three-level reduction for acceptance of responsibility. U.S.S.G. § 3E1.1(b). Based on a criminal history category of III, Rivera–DeCelis was sentenced on the drug charge to a prison term of 139 months, at the lower

---

the result of negotiation between the initial plea and sentencing.

**4.** As to the factual basis of the charges to which the defendant was offering to plead, the colloquy included the following:

THE COURT: Have you received a copy of the superseding indictment that mentions you in Counts One and Three?

THE DEFENDANT: Yes, sir.

THE COURT: Count One is the drug conspiracy count. There, you are charged with participating in a conspiracy.... The allegation is that you knowingly and intentionally conspired, and agreed with a number of persons to knowingly and intentionally distribute controlled substances.

THE DEFENDANT: Yes, sir.

THE COURT: Have with you [sic], possess and distribute controlled substances, specifically in an amount of not less than 50 grams of crack cocaine, not less than five kilograms of regular cocaine, some marijuana, and at least one kilogram of heroin. Do you understand that?

THE DEFENDANT: Yes.

With respect to the firearms charge, the colloquy included:

THE COURT: And that aside from selling drugs and making money, the different members of the conspiracy at time possessed weapons, firearms, to provide protection to the drug

operations or the conspiracy, not only from innocent people but also from rival gangs, and to prevent the intervention of law enforcement officers, and to provide a certain degree of intimidation ... of innocent people ...

THE DEFENDANT: Yes, sir.

THE COURT: Also, that at times certain members of the conspiracy, of which you are a part, carjacked citizens, took their cars away by force, in order to use the cars for purposes of— related to the drug conspiracy.

THE DEFENDANT: Yes, sir....

THE COURT: You are also pleading guilty to Count Three, which is the firearms count. There the government is alleging that from January of 1993, until on or about March of 1994, you, along with others, knowingly used and carried firearms, specifically semiautomatic pistols, during and in relation to a drug trafficking crime which is precisely the drug trafficking crime that you are charged with in Count One.

THE DEFENDANT: Yes, sir.

**5.** Rivera–DeCelis also admitted that he, as charged in Counts One and Three, actually possessed and distributed "controlled substances being a member of a conspiracy," and that he was aware of the acts of his co-conspirators "involving weapons, carjackings and proceeds, financial gain, et cetera."

end of the guideline range,[6] to be followed by a term of 60 months on the firearms charge. The remaining charges against Rivera–DeCelis were dismissed.

### 2. Legal Analysis

#### a. Challenge to the Guilty Plea

■ Although he never moved to withdraw his plea prior to sentencing, Rivera–DeCelis now challenges its validity.[7] He claims that his plea was not voluntary, because the district court failed to offer an adequate explanation of the charges against him or to determine whether he understood the consequences of his plea.

We do not agree. On the record before us, we find no error.

#### 1. Legal Standards

■ A defendant does not enjoy an absolute right to withdraw a plea of guilty, once it has been entered. *United States v. Isom,*

6. Given a base offense level of 31 and a criminal history of III, Rivera–DeCelis faced a guideline sentencing range, on the drug count alone, of 135—168 months.

7. To the contrary, Rivera–DeCelis' attorney insisted at sentencing that the request that his client be held responsible for a lower drug quantity was based on objections to the PSR, and that it was not a request to withdraw the defendant's plea. When pressed further, defense counsel acknowledged that he was not making a legal argument but offering an allocution on behalf of his client.

8. Rule 11(c) provides in pertinent part:
   (c) Advice to Defendant. Before accepting a plea of guilty ... the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands ...
   (1) The nature of the charge to which the plea is offered ...
   Fed.R.Crim.P. 11(c); *see McCarthy v. United States,* 394 U.S. 459, 466–67, 471–72, 89 S.Ct. 1166, 1171, 1173–74, 22 L.Ed.2d 418 (1969); *United States v. Allard,* 926 F.2d 1237, 1247 (1st Cir.1991).
   As a general matter, minor technical violations of Rule 11 do not require that a court set aside a plea of guilty; however, where the defects in the plea colloquy go to Rule 11's core concerns—the absence of coercion, the defendant's understanding of the charges and the defendant's knowledge of the consequences of his or her plea—the Rule mandates that the plea be set aside. *United*

85 F.3d 831, 834 (1st Cir.1996); *United States v. Austin,* 948 F.2d 783, 786 (1st Cir. 1991); Fed.R.Crim.P. 11 & 32(e). Where a defendant does not seek to withdraw his plea before the district court and challenges its validity only on appeal, he or she faces a high hurdle: The challenge can succeed only if the defendant demonstrates that there was a substantial defect in the Rule 11 proceeding itself.[8] *United States v. Piper,* 35 F.3d 611, 613–14 (1st Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1118, 130 L.Ed.2d 1082 (1995); *see also United States v. Japa,* 994 F.2d 899, 902 (1st Cir.1993);[9] *United States v. Parra–Ibañez,* 936 F.2d 588 (1st Cir. 1991);[10] *accord United States v. Cotal–Crespo,* 47 F.3d 1, 3 (1st Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 94, 133 L.Ed.2d 49 (1995); Fed.R.Crim.P. 32(e).

■ In evaluating the validity of an appellant's plea, we review the totality of the circumstances surrounding the Rule 11 hear-

*States v. Cotal–Crespo,* 47 F.3d 1, 4–5 (1st Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 94, 133 L.Ed.2d 49 (1995); *Allard,* 926 F.2d at 1244–45.

9. The *Japa* Court introduced a slightly different standard for an appellant who did not raise the Rule 11 challenge below: the defendant must prove that the violation amounts to "a fundamental defect which inherently results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure." *Id.* at 902.
   We have remarked that the extent of the burden on a defendant on direct appeal from a guilty plea "is somewhat cloudy," *United States v. Martínez–Martínez,* 69 F.3d 1215, 1219–20 (1st Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1343, 134 L.Ed.2d 492 (1996), and have suggested that the more imposing standard articulated in *Japa* might most appropriately operate only in collateral attacks upon a guilty plea, brought under 18 U.S.C. § 2255. *Id.* at 1220.
   We need not resolve that question in this case, because the defendant fails to meet either standard.

10. Although our review does not generally include matters raised for the first time on appeal, Rule 11 challenges are not waived if a defendant fails to raise the issue below. Rule 11's core concerns oblige courts of appeals to review the challenged processes, since the Rule's strictures go to " 'the fairness, integrity [and] public reputation of judicial proceedings.' " *Parra–Ibañez,* 936 F.2d at 593 (citations omitted).

ing. *Cotal–Crespo*, 47 F.3d at 4.[11]

## 2. The Plea Colloquy

As to the validity of the Rule 11 proceeding below, appellant Rivera–DeCelis rests his argument on two points: (1) his limited education and ability to understand the written word, because of his dyslexia; and (2) the district court's failure to ensure that Rivera–DeCelis actually had read the superseding indictment under which he was charged. The government argues that the appellant's Rule 11 challenge—at this late hour—is wholly without merit.

The government has the better argument.

The core concerns of Rule 11 require that the defendant be instructed in open court with respect to the "nature of the charge to which the plea is offered," Fed.R.Crim.P. 11(c)(1), and that a plea " 'cannot be considered truly voluntary unless the defendant possesses an understanding of the law in relation to the facts.' " *United States v. Broce*, 488 U.S. 563, 570, 109 S.Ct. 757, 762, 102 L.Ed.2d 927 (1989) (quoting *McCarthy v. United States*, 394 U.S. 459, 466, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418 (1969)); *Piper*, 35 F.3d at 614.

In the case before us, the district judge addressed Rivera–DeCelis personally, directly, and with careful questions designed to ensure that defendant actually understood the proceedings. The judge specifically explained both the elements of each offense and the factual accusations against the defendant. As he walked Rivera–DeCelis through these aspects of the case against him, the judge inquired—at each turn—whether Rivera–DeCelis subjectively understood the situation. The district judge also made sure that Rivera–DeCelis in fact grasped the consequences of his plea. Fed.R.Crim.P. 11(c)(1). Only after assuring himself that Rivera–DeCelis understood the charges, the facts that formed their bases and the consequences of his plea, did the district judge ask Rivera–DeCelis to attest to the facts to which he was pleading guilty.[12]

Consideration of other factors surrounding the plea does not yield a better result for the appellant. With respect to the validity of the proffered reasons for requesting that we set aside Rivera–DeCelis' plea, we are not persuaded, particularly given the care with which the district judge directly addressed the defendant on each issue of central concern under Rule 11. The timing of the request, made for the first time before an appellate court, also counsels against setting aside the plea. The defendant made no assertion of legal innocence; and, finally, the plea was offered pursuant to a negotiated plea agreement.

In short, the district judge fully addressed the core concerns of Rule 11. Accordingly,

---

**11.** The *Allard* Court noted: "There is no talismanic test for determining whether the core concerns of Rule 11 have been satisfied. The manner in which the charge is explained and the method for determining the defendant's understanding necessarily vary from case to case depending upon the capacity of the defendant and the attendant circumstances." *Allard*, 926 F.2d at 1245.

Factors surrounding the request to set aside a plea come into play: the plausibility and strength of the proffered reason for a plea withdrawal; the timing of the request; whether the defendant now asserts legal innocence; and whether the parties had reached a plea agreement. *See United States v. Pellerito*, 878 F.2d 1535, 1537 (1st Cir.1989), *cert. denied*, 502 U.S. 862, 112 S.Ct. 184, 116 L.Ed.2d 145 (1991); Fed.R.Crim.P. 32. As we have noted, "these factors are relevant to the ultimate issue to be addressed, namely whether the plea was 'knowing, voluntary and intelligent within the meaning of [Fed.R.Crim.P.]

11.' " *United States v. Gray*, 63 F.3d 57, 60 (1st Cir.1995) (citations omitted).

**12.** It strikes us that the appellant has turned a legitimate argument on its head. If the district court had merely made sure that a dyslexic defendant with only eight years of formal schooling had read an indictment—without oral questioning to ensure actual understanding—we might find error. *See, e.g., United States v. Gray*, 63 F.3d 57, 60–61 (1st Cir.1995) (reliance on a written document is an insufficient proxy for personal examination by the court).

That is not the case before us. Given Rivera–DeCelis' particular circumstances, the district court's direct, probing and careful questioning of the defendant assures us that the trial judge was doing as Rule 11 requires, looking to the reality of the situation faced by the defendant and making sure that the defendant actually understood the nature of the charges against him and the consequences of his plea. *See Allard*, 926 F.2d at 1245.

we decline to set aside appellant Rivera–DeCelis' plea of guilty.

### b. Sentencing Challenge: Relevant Conduct

■ Rivera–DeCelis also challenges his sentence on the ground that the drug quantity attributed to him was incorrectly inflated and did not reflect his limited participation in the conspiracy. The error is based, the appellant argues, on the district court's failure to make individualized findings. The government disagrees, stating that the sentencing court's findings were sufficiently precise and based solidly on the evidence presented.

We review the district judge's quantity determinations at sentencing for clear error. *United States v. Jiménez Martínez*, 83 F.3d 488, 492 (1st Cir.1996); 18 U.S.C. § 3742(e).

The appellant's argument is wholly without merit.

■ Under U.S.S.G. § 1B1.3, where a defendant engaged in "jointly undertaken criminal activity," he or she may be sentenced for his or her own acts and "all reasonably foreseeable acts and omissions of others in furtherance of [that] ... activity." U.S.S.G. § 1B1.3(a)(1)(B) & comment n. 1. In the context of drug trafficking offenses, where sentences are driven largely by the amount of drugs for which a defendant is held accountable, "the base offense level of a coconspirator ... should reflect only the quantity of drugs he reasonably foresees is the object of the conspiracy to distribute after he joins the conspiracy." *United States v. O'Campo*, 973 F.2d 1015, 1026 (1st Cir.1992); *see also United States v. Campbell*, 61 F.3d 976, 982 (1st Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 1556, 134 L.Ed.2d 657 (1996); U.S.S.G. § 2D1.1(c) (drug quantity table).

■ It is well settled that defendants in a drug conspiracy are not only responsible for drug quantities which they themselves sold, transported or negotiated; they are also responsible for drug amounts which, from their particular vantage points in the conspiracy, it was reasonably foreseeable would be involved, and which were in fact involved, in the offense. *See, e.g., United States v. Lombard*, 72 F.3d 170, 176 (1st Cir.1995); *United States v. Carrozza*, 4 F.3d 70, 80 (1st Cir. 1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1644, 128 L.Ed.2d 365 (1994); U.S.S.G. § 1B1.3 & commentary. It is the project of the sentencing court to determine what a particular defendant could reasonably have foreseen. *Carrozza*, 4 F.3d at 76.

In this case, the sentencing judge carried out this responsibility without error.

It is undisputed that Rivera–DeCelis pled guilty to engaging in jointly undertaken criminal activity triggering the application of section 1B1.3(a)(1)(B). At his plea hearing, Rivera–DeCelis accepted the factual recitation of the indictment, indicating an involvement in the conspiracy from January 1993 through March of 1994. He also acknowledged knowing of trafficking in crack cocaine, cocaine, heroin and marijuana over that period of time. His plea, indeed, situated him in the center of the conspiracy's activities, aware of its use of firearms as well as the extent of the drug dealing.

The district judge was not persuaded by defense counsel's explanation that he had urged his client to accept the plea because he was unsure he could confirm the circumscribed scope of the defendant's involvement.[13] The defendant did little else to confirm that his vantage point was so distant from the main activity and he stood in that place for such a fleeting moment that he could not reasonably have foreseen that not less than 15 but not more than 50 kilograms of cocaine would be involved in the offense. Notably, he never suggested—much less proved—a precise amount for which he should be held accountable.

■ Against this shaky challenge, the government offered sturdy support for attribut-

---

13. When asked why the defendant would sign a Rule 11(e)(1)(C) agreement for a specific sentence, if he believed that the true nature of his involvement would result in a much lower sentence, the defendant's attorney explained:

... when I agreed to that, I was under the impression ... that three months could not be corroborated by the Government. Now three months could be corroborated by the Government ... the amount of cocaine would—should—be less than the one in the indictment.

ing the defendant with at least 15 to 50 kilograms of cocaine. It reminded the sentencing court of the testimony of a co-conspirator, which had indicated that daily drug sales of which Rivera–DeCelis would have been aware amounted to well over 50 kilograms of cocaine in a matter of months.[14] It also cast doubt on the allegedly limited nature of Rivera–DeCelis' involvement by focusing the court's attention on a photograph in which Rivera–DeCelis is pictured, holding a firearm, as a bodyguard to the leader of the conspiracy.[15]

On this record, the district judge did not clearly err in adopting the government's reasoning, noting that the defendant reaped a benefit from the plea agreement and deciding that Rivera–DeCelis' base offense level should be 34.

We therefore affirm the district court's sentencing determination.

## B. *Carmen Pacheco–Rijos*

### 1. Facts

Under the indictment returned in March of 1994, appellant Pacheco–Rijos was charged with four offenses: Count One charged her with conspiracy to distribute drugs, in amounts of not less than fifty grams of cocaine base, not less than five kilograms of cocaine, not less than one kilogram of heroin, and some marijuana, from in or about January of 1993 until in or about March of 1994, in violation of 21 U.S.C. §§ 841(a)(1) and 846;

Counts Three, Four and Five charged her, along with other co-defendants, with knowingly using and carrying firearms during and in relation to her drug trafficking, in violation of 18 U.S.C. §§ 921(a)(3) & (c)(1) & 924(c)(1).

Pacheco–Rijos was arraigned on March 14, 1994, at which time she pled not guilty. On September 7, 1994, she changed her plea to guilty to Count One, which charged her with violating 21 U.S.C. § 846.[16] Her plea was offered pursuant to Rule 11(e)(1)(A) & (B) of the Federal Rules of Criminal Procedure, under which the parties may recommend sentencing terms but those terms are not binding upon the court. *Cf.* Fed.R.Crim.P. 11(e)(1)(C).

The agreement recommended a base offense level of 28 under U.S.S.G. § 2D1.1 and a downward adjustment of three levels for acceptance of responsibility under U.S.S.G. § 3E1.1(b), resulting in an offense level of 25. The defendant acknowledged that although those preliminary calculations resulted in a guideline range of 57 to 71 months, she could receive a statutory minimum of 60 months imprisonment. The agreement, however, left the door open for application of other provisions which might affect her sentence.[17]

At the outset of the sentencing hearing, the district judge mischaracterized the plea agreement as a Rule 11(e)(1)(C) agreement, under which the sentencing judge would be required to accept the agreement in toto or reject it, thereby allowing the defendant to

---

**14.** The government made the following argument at sentencing:

> MR. PEREIRA: Your Honor, initially let me address the issue of the quantity of drugs so that the record is clear as to that. We provided, of course, to this defendant as we did to all defendants, the grand jury transcripts of Ramón Alexandro López and it's part of the record of this court.... [H]e is asked, have you ever heard in terms from anybody or your own estimation that a kilo of cocaine gets consumed or cooked into crack every 11 days? The answer to that is, yes....
> Now, even if we assume that this individual, that this present defendant, Ismael Rivera, participated in this conspiracy only 90 days, that is eight kilos of crack cocaine. 1.5 kilos of crack cocaine is a level 38 offense in the 1994 guidelines, so, [it] certainly covers the sentence which he agreed to.

**15.** We find the government's rendition wholly believable. Where, as here, a view of the record is entirely plausible, the sentencing court's adoption of that view cannot amount to clear error. *See United States v. St. Cyr,* 977 F.2d 698, 706 (1st Cir.1992).

**16.** The underlying offense was 21 U.S.C. § 841(a)(1), which prohibits the knowing or intentional manufacturing, distributing or possessing with intent to manufacture, distribute or dispense a controlled substance. She did not plead guilty to any firearms charges.

**17.** The agreement stated: "The United States and defendant stipulate a sixty (60) month term of confinement. No agreement concerning the application of any other sentencing guideline has been entered into by the parties. All other aspects of the sentence are left to the sound discretion of the Court."

withdraw her plea. Such an agreement would have represented the parties' negotiations concerning all the guideline provisions that should determine the sentence.

Pacheco–Rijos' plea agreement, however, did not pretend to such completeness.

When counsel for Pacheco–Rijos moved for a three-level adjustment for acceptance of responsibility, the court accepted it both because the plea agreement had contemplated such an adjustment and because he found Pacheco–Rijos' conduct merited it. He accepted an offense level of 25, with a guideline range of 57 to 71 months.

However, when counsel requested the application of the safety valve provision, 21 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2, and, if granted, a further two-level reduction for minor participant status under U.S.S.G. § 3B1.2(b), requests that were not in the plea agreement, the district court declined to accept them. The appellant argued that she met all the requirements of the safety valve provision. The government responded that, among other things, Pacheco–Rijos had failed honestly to disclose her own participation in the conspiracy.[18] In support of its claim, the government stated simply that her failure "can be gleaned from the Presentence Report in this case."

The prosecutor's citation to the PSR is perplexing. It appears that initially the PSR had not placed Pacheco–Rijos among the defendants for whom the government had designated a minimal or minor role, but among those for whom no role had been "adjudicated." [19] However, after reviewing the objection of the defendant with respect to the scope of her participation, the probation officer, in the final PSR, adopted Pacheco–Rijos' own view of her participation,[20] designating her as a "minor participant" and characterizing her role as "passive."

Notwithstanding, the sentencing judge denied the request for relief from the mandatory minimum sentence. He summarily concluded: "5C1.2 does not apply, because she has not cooperated fully as required by guideline Section 5C1.2(5)." In addition, he stated: "And besides that, there is a stipulation in the plea agreement [that] she be sentenced to 60 months. That was good enough in September, [so it] should be good enough today."

In the light of his rejection of the safety valve provision, the judge indicated that there was no need to consider whether Pacheco–Rijos should have been given a two-level adjustment based on her role in the offense, an adjustment that would have brought her sentence under the Guidelines

---

**18.** The government also argued that although this defendant did not participate in conduct that led to death or serious bodily injury to any person, others in the conspiracy did, thus rendering her ineligible for the benefits of the safety valve provision. The district court did not address this argument, finding that Pacheco–Rijos did not qualify for relief under the safety valve provision because she failed to cooperate fully.

**19.** The PSRs for all of the appellants contained the same factual recitation and structure. It therefore merits some attention that Rivera–De-Celis' PSR, prepared before Pacheco–Rijos' final PSR, contained the following: "[b]ased on the defendants' role in the drug enterprise" other defendants were identified by the government as being "minimal participants," or "minor participants," while Pacheco–Rijos was listed among those who had "not been adjudicated any role adjustment" since she, along with others, were "considered equally culpable in their participation in the offense."

After Pacheco–Rijos objected to the probation officer's failure to designate her as a minor participant, the PSR was altered, not only in terms

of the ultimate calculation but also in terms of the factual recitation. In her final PSR, the facts indicated that the "government identified" Pacheco–Rijos as a minor participant.

**20.** Before sentencing, counsel for Pacheco–Rijos submitted a written statement concerning the defendant's involvement in the offense and specifically elaborating on her contention that she had a role in the enterprise but one more limited than that suggested in the indictment. She conceded that other co-defendants used Pacheco–Rijos' home as a place to pack controlled substances, that she knew generally of these activities and that she did little to stop it. She denied ever handling money or drugs in the illegal operation and ever being at all involved in the possession or concealment of firearms. Further, while Pacheco–Rijos lived with three of the co-defendants in this case, Luis Antonio García, Agustín Aponte–Merced and Juan José Miranda–Santiago, she vowed to having no other knowledge of their illegal acts.

still further below the 60 month statutory minimum.[21]

Continuing the same apparent misapprehension under which he labored from the beginning, the district judge concluded the sentencing hearing by reiterating: "I should make it very clear on this record that her plea agreement was an 11—Federal Rule Criminal Procedure 11(e)(1)(C) plea. And therefore the 60 months that I have given her was precisely what she bargained for during the plea negotiations."

## 2. Legal Analysis: The Safety Valve Provision

■ Appellant Pacheco–Rijos argues that the sentencing court erred in declining to grant her relief from the mandatory minimum sentence for the drug trafficking in which she admits she was involved. *See* 18 U.S.C. § 3553(f); U.S.S.G. § 5C1.2. The government responds that the sentencing court appropriately determined that she was not entitled, in the first instance, to relief from the mandatory minimum, and that, in any event, the district court's decision does not amount to clear error.

■ We review for clear error the district court's factual determinations with respect to whether the appellant was entitled to relief from the mandatory minimum under U.S.S.G. § 5C1.2. *United States v. Rodríguez*, 60 F.3d 193, 195 n. 1 (5th Cir.) (court's refusal to apply § 5C1.2 is a factual finding reviewed for clear error), *cert. denied*, —— U.S.——, 116 S.Ct. 542, 133 L.Ed.2d 446 (1995); *see also United States v. Montañez*, 82 F.3d 520, 521 (1st Cir.1996).

We begin our examination with an observation. The review is complicated by the paucity of detail in the record below and our concern for two obvious mistakes in the sentencing hearing which shaped the outcome: first, that the district court wrongly believed that the plea agreement was a binding one and Pacheco–Rijos was arguing for an outcome for which she had not negotiated; and second, that the PSR somehow supported the government's position on Pacheco–Rijos' cooperation, when it did not.

When Congress enacted the Violent Crime Control and Law Enforcement Act of 1994, it passed into law a safety valve provision which permits judicial departures for some low-level, first-time offenders who otherwise would face mandatory minimum sentences. Pub.L. No. 103–322 § 80001, 108 Stat. 1796, 1985 (1994) (amending 18 U.S.C. § 3553).[22]

■ Under 18 U.S.C. § 3553(f), a defendant may avoid the mandatory minimum and be sentenced below the applicable guideline term, if he or she meets the five requirements set forth in the provision. The section provides in pertinent part:

... the court shall impose a sentence ... without regard to any statutory minimum sentence, if the court finds at sentencing, after the Government has been afforded the opportunity to make a recommendation, that:

---

21. Here again, the sentencing court focused on the plea agreement in a way that suggested he believed it to have been binding: "I'm going to leave it as it was in the plea agreement. I will not honor that adjustment. And we're going to leave it at 25 .... This Court understands that the defendant is not entitled to a minor participant adjustment under U.S.S.G. § 3B1.2(b)."

This conclusion is at odds with the district court's own judgment in this case, in which the court states that it adopts the findings and sentence calculations of the PSR without exception. The PSR, however, had granted Pacheco–Rijos the minor participant adjustment.

22. The safety valve provision was enacted in response to concerns that mandatory minimums are not compatible with the guideline regime. The provision addressed the following irony: Mandatory minimums had, and have, little real impact on the sentences received by serious repeat offenders, where the guideline calculation arrives at a base offense level higher than the mandatory minimum, and where mitigating factors may therefore be considered. Prior to passage of the section 3553(f), however, for the least culpable offenders, mandatory minimums operated to block sentences from reflecting the very mitigating factors that could ease sentences of the more culpable. Ironically, courts were obliged to impose upon the least culpable defendants sentences similar to those imposed on more culpable counterparts. As a House Report noted, the safety valve provision was designed to "permit ... greater integration between sentencing guideline mitigating factors and mandatory minimums ..." H.R.Rep. No. 460, 103d Cong., 2d Sess. 4 (1994).

(1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;

(2) that defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(3) the offense did not result in death or serious bodily injury to any person;

(4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense ...; and (5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

18 U.S.C. § 3553(f); *see also* U.S.S.G. § 5C1.2 (authorizes sentence below the mandatory minimum for specific offenses, subject to compliance with section 3553(f)); *Montañez*, 82 F.3d at 521 (discussion of the aims of the legislation). Notably, whether there is a binding plea agreement or, as here, a nonbinding agreement, if it is determined that a defendant has met the five requirements of the provision, the judge is required to set aside the mandatory minimum and sentence the defendant under the Guidelines.

In this case, the district judge denied application of the safety valve provision, focusing only on the issue of Pacheco–Rijos' cooperation.[23] Apparently accepting the government's argument that the facts which could be "gleaned" from the PSR supported denying application of section 3553(f)(5), the

judge determined that Pacheco–Rijos did not deserve relief from her mandatory minimum sentence because she had failed to "cooperate fully." In so deciding, he also stressed that Pacheco–Rijos had not negotiated for relief from the mandatory minimum in her plea agreement, an agreement which, as noted above, he incorrectly believed to be binding.

Section 3553(f)(5) requires that defendants "truthfully provide the government" no later than at sentencing all the information they have regarding "the offense or offenses that were part of the same course of conduct or part of a common scheme or plan." 18 U.S.C. § 3553(f)(5); U.S.S.G. § 5C1.2.

Questions with respect to the scope of both a defendant's duty to "provide" information—and the very nature of that information—have already confronted this Court. In *United States v. Wrenn*, 66 F.3d 1, 3 (1st Cir.1995), we held that where the only disclosure to the government was made inadvertently—and through the government's own efforts to intercept the defendant's conversations—that defendant could not be said to have "provided" the information to the government. Further, the *Wrenn* Court noted that where the defendant had indicated that he knew the identity of customers involved in a drug trafficking enterprise, but he refused to provide any names, it certainly was not erroneous for the district court to determine that the defendant had failed to provide "all" information which he concededly had. *Id.*

The question of scope was further addressed in *United States v. Montañez*, 82 F.3d 520 (1st Cir.1996), in which this Court confronted a slightly different question: whether the requirement that a defendant truthfully provide "all" information established an affirmative duty on the part of that defendant to offer himself or herself up to the government for debriefing. *Id.* at 522–523. While we determined that section

---

23. As to the other requirements, there is no dispute that Pacheco–Rijos was a first-time offender and that she was not a manager or leader of the conspiracy. Nor has the government contended that she used threats of violence in carrying out her role. The disputes arose in the context of sections 3553(f)(3) & (5). At sentencing, the government contended that: (1) the offense to

which she pled guilty involved serious bodily injury or death; and (2) that Pacheco–Rijos failed to meet the final requirement of the safety valve provision, namely, that she fully disclose her involvement in the offense. As noted above, the court addressed only the government's second argument.

3553(f)(5) does not require that much,[24] we agreed with the district court that what the defendant provided in that case was patently inadequate. For although Montañez agreed that he was supplied drugs that he then delivered, he offered no plausible reason why he did not provide the government with the names of his drug suppliers. Under the circumstances, we found that Montañez "did not disclose information that he might reasonably be expected to possess, nor persuasively explain its absence." *Id.* at 523; *see also Wrenn,* 66 F.3d at 3.

This case is not like *Wrenn* or *Montañez.* In a submission by her counsel, included as part of her PSR, Pacheco–Rijos explained the limits of her involvement in the conspiracy: She was a passive participant, knowing that drugs were stored in the house and doing little to stop it. She said that she never handled the drugs, nor was she aware of the firearms.

That characterization was never objected to nor explicitly contradicted by the government. Furthermore, it appears to have been accepted by the probation department whose amended report recommended granting Pacheco–Rijos a two-level adjustment as a minor participant and specifically characterized her as a "passive" member of the conspiracy.

While it is entirely possible that a minor participant in the criminal activities might know more than her designated role suggests, the government offered nothing concrete to so indicate. In this case, as distinguished from *Wrenn* or *Montañez,* the government did not rebut a facially plausible tale of limited involvement by pointing to information this defendant must have known; there was no allegation that this defendant knew the names of drug suppliers or customers and refused to indicate those names. There was no specific information the government alleged that Pacheco–Rijos had and failed to provide.

The government cannot assure success simply by saying, "We don't believe the defendant," and doing nothing more. If it could, it would effectively eliminate the self-conscious difference between the safety valve provision, U.S.S.G. § 5C1.2, which obligates the district court to determine if the defendant has truthfully provided all information, *see Montañez,* 82 F.3d at 523, and the substantial assistance provision, U.S.S.G. § 5K1.1, which permits, upon the government's motion and at the court's discretion, a downward adjustment for certain defendants who have provided substantial assistance to the government.[25]

In the PSR, there was one conceivable basis for the government's position, a basis which, standing alone, is wholly inadequate: that because Pacheco–Rijos shared living quarters with other co-defendants,[26] she must have had more information than she provided to the government.

Section 3553(f)(5) does not invite such speculation. If mere conjecture based on personal relationships could bar application of section 3553(f)(5), in all cases where minor participants knew others more involved, the safety valve provision would be beyond their grasp. Such a result was not intended by Congress and cannot be permitted here. Therefore, district court's bare conclusion that Pacheco–Rijos did not "cooperate fully," absent either specific factual findings or easily recognizable support in the record, cannot be enough to thwart her effort to avoid impo-

---

24. The fact that a full debriefing is not statutorily required does not provide a full answer to the question. The *Montañez* Court noted: "[A]s a practical matter, a defendant who declines to offer himself for a debriefing takes a very dangerous course." *Montañez,* 82 F.3d at 523.

25. By this analysis, we do not suggest any change in the defendant's ultimate burden of proof under U.S.S.G. § 5C1.2. The defendant plainly has the burden of proving, by a preponderance of the evidence, entitlement to relief under section 3553(f). However, where a defendant in her submissions credibly demonstrates that she has provided the government with all the information she reasonably was expected to possess, *Montañez* 82 F.3d at 523, in order to defeat her claim, the government must at least come forward with some sound reason to suggest otherwise.

26. One co-defendant apparently shared a somewhat independent living quarters with Pacheco–Rijos' daughter.

sition of a mandatory minimum sentence.[27]

Accordingly, we vacate the sentence and remand this case for the purpose of allowing the district court to revisit this issue and clarify the record by filing supplemental findings.[28] In the event that the court finds its initial calculation in error, it should so identify and return, as well, to the issue of other adjustments, if appropriate, under the Guidelines.

### C. *Juan José Miranda–Santiago*
#### 1. Facts

Appellant Miranda–Santiago was indicted on the drug and firearms charges detailed in Counts One, Three, Four and Five of the superseding indictment in this case. At his arraignment, Miranda–Santiago pled not guilty to all charges. On September 7, 1994, he offered to change his plea to guilty. Under a plea agreement entered into pursuant to Rule 11(e)(1)(A) & (B), Miranda–Santiago offered to plead guilty to Count One, charging him with possession with intent to distribute narcotics, 21 U.S.C. § 846. In addition, the parties recommended to the court a base offense level of 30, with a three-level reduction for acceptance of responsibility, under U.S.S.G. § 3E1.1(b)(1) & (2), resulting in a sentencing range of 70–87 months.[29] More specifically, the parties agreed to ask for a sentence of 84 months.

The Miranda–Santiago PSR contained the same general recital of the facts as that contained in the other PSRs discussed above. As to Miranda–Santiago's role in the enterprise, the PSR indicated that this defendant worked as a drug distributor. He was not identified as someone who used firearms or provided protection for the operation. The PSR designated him as a minor participant in the offense. Notwithstanding that finding, the probation officer did not include a two-level downward adjustment as part of the sentencing calculation. The PSR recommended a base level of 30, with only a three-level reduction for acceptance of responsibility.

The appellant was sentenced on January 11, 1995. During the hearing, the defendant voiced no objection to the findings contained in the PSR.[30] Although he did not do so during the sentencing hearing, in the written judgment the judge adopted the PSR's factual findings, without exception. The district court arrived at a base offense level of 27 and sentenced Miranda–Santiago to a prison term of 78 months, eighteen months above the mandatory minimum for that offense.

#### 2. Legal Analysis: Minor Participant Adjustment

■ On appeal, Miranda–Santiago challenges his sentence, arguing that the district

---

**27.** We note one other strong inference from the record: that the district court did not apply this provision out of deference to the plea agreement into which the parties had entered and which he erroneously believed would be completely voided unless he accepted the sentencing terms. This was not the case. In any event, a plea agreement—even a binding one—does not replace the independent determination of the district court as to whether this provision applies. *See Carrozza*, 4 F.3d at 87; U.S.S.G. § 6B1.2(c) & commentary.

**28.** The remaining argument made by the government below—that the offense involved serious bodily injury or death thereby disqualifying Pacheco–Rijos from the benefits of the safety valve provision—lacks merit. It therefore does not provide an alternative reason to affirm the district court's decision. Indeed, the government has all but abandoned the argument in this forum.

**29.** The parties had recommended that, for sentencing purposes, the defendant be held account-

able for at least 3.5 but no more than 5 kilograms of cocaine. Accordingly, the base offense level in this case was set at 30. U.S.S.G. § 2D1.1. The defendant faced a mandatory minimum five year term of imprisonment under 21 U.S.C. § 841(b)(1)(B).

**30.** The district judge asked the defendant's counsel if there were any objections to the PSR. He reported that there were none and did not ask the district court judge to make specific role-in-the-offense findings. The judge also asked the defendant if he had reviewed the PSR with his attorney and if he any objections to it. Miranda–Santiago responded that he had discussed the report with counsel and that he had no objections to it.

Before this Court, appellant argues that he nor his counsel noticed the inconsistency within the report. Defendant's counsel notes that Miranda–Santiago is illiterate, having only stayed in school through the sixth grade and that since he is Spanish-speaking and does not understand English, his only review of the PSR came through an oral translation of its nineteen pages.

court erred by failing to adjust his offense level downward two levels for his role in the offense. The appellant contends that since the sentencing court adopted the factual findings of the PSR, the decision not to grant Miranda–Santiago a minor participant adjustment was a simple misapplication of the Guidelines. Our review—notwithstanding the appellant's failure to raise the issue below—should be plenary and the sentence vacated.

The government disagrees and makes, essentially, two arguments: First, it contends that, as a procedural matter, this Court ought not review this issue because the appellant waived' is rights by not raising the question below. Second, the government asserts that, even if the issue is not waived, the appellant challenges a factual determination at sentencing and the determination was not clear error.

We will consider each of the government's arguments in turn.

### a. Waiver

The government argues that Miranda–Santiago, in voicing no objection to the PSR at sentencing, has waived his right to raise this issue on appeal. The appellant argues that neither counsel nor the appellant noticed the error, and that, particularly given the pressures put on non-English speaking defendants with respect to lengthy reports only orally translated into Spanish, the absence of an objection should not constitute waiver.

We find that this defendant, given these circumstances, forfeited his rights but did not waive them. The difference is critical: "Whereas forfeiture is the failure to make a timely assertion of a right, waiver is the

'intentional relinquishment or abandonment of a known right.'" *United States v. Olano,* 507 U.S. 725, 733, 113 S.Ct. 1770, 1777, 123 L.Ed.2d 508 (1993); *see also Carrozza,* 4 F.3d at 87 & n. 13. Under *Olano,* the defendant who forfeited his right is entitled to review for plain error. This is a compelling case for the doctrine. After all, the claimed error could well have an impact on the length of defendant's incarceration.

### b. Standard of Review

The standard of review is nonetheless imposing. The appellant seeks the benefit of a plenary review of the question. We disagree. Where a defendant has failed to raise the legal issue below, the issue can be examined only for plain error.[31] Fed.R.Crim.P. 52(b); *Olano,* 507 U.S. at 730–32, 113 S.Ct. at 1775–77.

### c. Minor Participant Adjustment

When a defendant is determined to be a "minor" or "minimal" participant in criminal activity, a sentencing court is directed to decrease the base offense level. U.S.S.G. § 3B1.2(a) & (b).[32] A minor participant is one "who plays a part in committing the offense that makes him substantially less culpable than the average participant." U.S.S.G. § 3B1.2, comment (backg'd).[33]

On appeal, Miranda–Santiago argues that he was entitled to that reduction, that, indeed, the district court adopted factual findings consistent with granting the reduction and that the Court committed plain error in denying him the benefit of the role-in-the-offense adjustment. The government argues that the defendant was not entitled to the adjustment in the first instance and that the

31. The plain error standard requires that the appellant demonstrate that: (1) there was an "error;" (2) it was "plain;" and (3) it affected "the substantial rights" of the defendant. *E.g., United States v. Olano,* 507 U.S. at 732–33, 113 S.Ct. at 1777. Even if a defendant meets the standard established by the *Olano* Court, appellate courts maintain discretion to recognize the error and are directed to consider whether the error affects "the fairness, integrity or public reputation of judicial proceedings." *Id.* at 732, 735, 113 S.Ct. at 1776, 1778.

32. Minimal participation merits a four-level decrease; U.S.S.G. § 1B1.2(a); minor participation merits a two-level decrease, U.S.S.G. § 1B1.2(b).

The appellant contends—and the government initially agreed—that Miranda–Santiago was a minor participant in the criminal enterprise.

33. The defendant carries the burden of proving that he was a minor participant entitled to a two-level decrease under U.S.S.G. § 3B1.2. *E.g., United States v. Ocasio–Rivera,* 991 F.2d 1, 3 (1st Cir.1993).

sentencing should not be disturbed at this late hour, in any event.

The appellant has the better argument.

■ It is a fundamental obligation of a district court at sentencing to "state in open court the reasons for its imposition of the particular sentence." 18 U.S.C. § 3553(c). To accomplish this goal, the court ordinarily must make "reasonably specific findings" and "explain, generally, how it computed the applicable guideline range." *United States v. McDowell,* 918 F.2d 1004, 1012 (1st Cir.1990).

■ This obligation has become particularly critical since the enactment of the Sentencing Guidelines. Under the guideline regime, factual determinations made by the sentencing judge may have a profound effect on the length of defendant's incarceration. Ensuring our ability to engage in meaningful review of those findings is essential. So while we have found that a sentencing court can comply with section 3553(c) by adopting findings from the PSR, *see, e.g., United States v. Savoie,* 985 F.2d 612, 618 (1st Cir. 1993), this technique cannot be employed when the PSR itself is unclear or inherently contradictory. Moreover, we have repeatedly urged district courts, in the interests of buttressing sentencing calculations and facilitating appellate review, to make certain that the bases of the calculations are clearly set forth. *See United States v. Van,* 87 F.3d 1, 2–3 (1st Cir.1996) (collecting cases).

In this case, the district judge made few findings at the sentencing hearing. In his judgment, he simply adopted the PSR, in toto. There is a problem with that procedure in this case: The PSR, as best we can decipher it, judged Miranda–Santiago a minor participant in the conspiracy. It was merely in calculating the sentence that this finding did not translate into a two-level downward adjustment. The record therefore does not provide an adequate factual basis for the district court's determination with respect to Miranda–Santiago's role.

This error is clear, obvious, and potentially affects the appellant's substantial rights. Accordingly, we vacate this sentence and remand this case to the district court for the purpose of having the court file supplemental findings with respect to appellant Miranda–Santiago's role in the offense. In the event that the district court finds its computation in error, the court should include such a determination in its findings.

## III. CONCLUSION

The convictions of all appellants are *affirmed.* The sentence of appellant Rivera–DeCelis is also *affirmed.* The sentences of the appellants Pacheco–Rijos and Miranda–Santiago are *vacated,* and their cases are *remanded* for further proceedings consistent with this opinion.