[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 27, 2008
THOMAS K. KAHN
CLERK

No. 07-15078
Non-Argument Calendar
_____

D.C. Docket No. 07-20453-CR-PCH

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

OSCAR DAMIAN RIOS-CALLE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(June 27, 2008)**

Before ANDERSON, BIRCH and HULL, Circuit Judges.

PER CURIAM:

Oscar Rios-Calle appeals his 120-month sentence imposed for conspiring to

possess with intent to distribute one or more kilograms of heroin, in violation of

21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846, and attempting to possess with intent

to distribute one or more kilograms of heroin, in violation of 21 U.S.C. § 841(b)(1)(A)(1). Contrary to Rios-Calle's contention, the district court did not clearly error in denying safety-valve relief because Rios-Calle did not provide all the information that he possessed regarding the heroin conspiracy. Accordingly, we affirm.

## I. BACKGROUND

A federal grand jury indicted Rios-Calle and Luis Vanegas-Mendez on a three-count indictment. R1-7. Rios-Calle pled guilty to Count 1, conspiring to possess heroin with intent to distribute, and Count 3, attempting to possess heroin with intent to distribute. R2. According to the pre-sentence investigation report ("PSI"), a confidential informant ("CI") gave information leading to the arrest of Vanegas-Mendez. When arrested, Vanegas-Mendez was in possession of a significant quantity of heroin, and he began cooperating with the FBI.

On 11 June 2007, Vanegas-Mendez telephoned the owner of the heroin in Colombia and was told that someone would contact him. Because Vanegas-Mendez was in custody, FBI agents gave his phone to another confidential information ("CI2"). The next day, Rios-Calle contacted CI2, arranged a meeting, and agreed to pay a portion of the transportation fee. The following day, Rios-Calle met with CI2 at the agreed location and was arrested. When he was arrested,

$5,000 was found on Rios-Calle's person. Rios-Calle's recent previous jobs had paid him between $350 per week and $1,800 per month.

Rios-Calle told the probation officer that he had received a call from his uncle in Colombia on 12 June 2007. The uncle asked Rios-Calle to do him a favor for one of the uncle's friends who had gotten into trouble in South Florida. The uncle wanted Rios-Calle to take the $5,000 to someone else, who then would give Rios-Calle a package to hold until another person came and obtained it from him.

In preparing the PSI, the probation officer applied U.S.S.G. § 2D1.1(a)(3) to calculate a base offense level of 32 based on the drug convictions. Rios-Calle qualified for a two-level reduction for acceptance of responsibility, resulting in a total offense level of 30, with a criminal history category of I. This yielded a sentencing range of 97-121 months of imprisonment and, after adjustment for the statutory minimum sentence of ten years, the Sentencing Guidelines range was 120-121 months of imprisonment. The statutory maximum sentence is life.

In relevant part, the government objected to the original version of the PSI because it applied safety-valve relief, U.S.S.G. § 5C1.2, and the Guidelines reduction under U.S.S.G. § 2D1.1(b)(9). In response, the probation officer revised the PSI so that Rios-Calle was not described as qualifying for those reductions.

Rios-Calle objected to the PSI because it did not grant him a minor-role reduction under U.S.S.G. § 3B1.2(b).

At the sentencing hearing, Rios-Calle renewed his objections and argued that the probation officer was correct in the initial determination that he qualified for safety-valve relief. R3 at 7. After resolving objections not relevant on appeal, the district court considered the applicability of safety-valve relief. Id. at 9, 12-14. The government asserted that Rios-Calle's statements were incomplete. Id. at 14. In response, the district court continued the sentencing to give Rios-Calle additional time to come forward with complete information. Id.

At the second sentencing hearing, the government noted that it did not feel Rios-Calle had completely explained the source of the $5,000. R4 at 5. When told that Rios-Calle had stated that the money came from his home, the district court commented: "Let me tell you, that's not a very believable story. He just happens to have $5,000 in a shoe box in his home." Id. at 6. The district court held a brief recess to allow Rios-Calle another opportunity to make statements to the government. After recess, the government explained the issues it had with the completeness of Rios-Calle's statements up to that point by stating:

> Mr. Rios-Calle cannot tell me what his uncle does for a living. Cannot tell me his [uncle's] phone number. Cannot tell me where [his uncle] lives. Cannot tell me where his grandmother lives outside of just Medellin, Colombia.

4

He stated that he speaks to his uncle when he calls his grandmother's house, he is there. The last time he spoke with his uncle before this occasion was in April when the uncle asked the defendant to show his cousin, who is in the military, around New York. He doesn't know what branch of the military his cousin is in so I can confirm that.

Id. at 7. Additionally, the government represented:

The source of the money is his own. However, when he spoke with his uncle and—on the second after he met with the informant on the first day and told the uncle the package he is supposed to pick up was drugs he never asked his uncle why are you asking me to pick up drugs, who is this person I am picking up drugs for.
. . . .
When I asked him how he was supposed to be paid back he said simply that the uncle told him he will get paid back the following Monday.
He did not inquire by whom. He did not inquire how. He stated he did not want to know, he was not interested in knowing who the owner of the drugs was.
He did not inform his uncle he had a previous conviction for drug possession and that he was out on bail for an arrest on a drug related case. He did not think he needed to tell his uncle that.

Id. at 8. The government also told the court that Rios-Calle did not know who would pick up the package containing heroin from him. Id.

In response, Rios-Calle's counsel represented to the court that, because Rios-Calle had moved to the United States, he had not seen his uncle in thirteen years. Id. at 9. Rios-Calle knew that his uncle lived in Medellin, but he did not know his uncle's telephone number; the number was on his cell phone taken from him by the government. Id. The court asked about the source of the money and

5

defense counsel represented that he had brought $6,500 with him when he moved from New York to Miami.  Id.  He had fronted the money with the expectation that he would be repaid and compensated for doing the favor for his uncle.  Id.  The court stated: "This is not very good, Mr. Kahn.  It's not very believable."  Id.

Defense counsel responded that it was unfair to fault Rios-Calle for his lack of knowledge given his minor role in the heroin conspiracy.  Id. at 9-10.  The court explained: "I don't think that is what the Government is asking.  They're asking for some of the details to kind of test his truthfulness."  Id. at 10.  Later, the court analyzed the issue: "The question is do I believe he has the knowledge.  I don't [know] how much knowledge he has.  The Government I think has the same feeling I have."  Id.  The district court ruled that Rios-Calle was not eligible for safety-valve relief: "I do agree with the Government.  I think [Rios-Calle] is hiding the ball."  Id. at 11.

During his allocution, Rios-Calle expressed dismay that the government did not believe that he had been completely honest.   In response, the district court offered to take another recess to give Rios-Calle time to make a more complete statement.  Rios-Calle stated that he had already told everything that he knew and declined the district court's offer.   The district court explained that it was not expecting Rios-Calle to tell everything his uncle had done in the past thirteen

6

years, but it did not "think [Rios-Calle] has given a full and complete account of this transaction." Id. at 14. Pursuant to the applicable statutory minimum, the court sentenced Rios-Calle to 120 months of imprisonment.

## II. DISCUSSION

On appeal, Rios-Calle argues that the district court clearly erred in finding him ineligible for safety-valve relief. He contends that he was completely truthful because he told the government everything that he knew about the heroin conspiracy. Rios-Calle asserts that the government inappropriately raised the standard by demanding information the government thought Rios-Calle should have known. According to Rios-Calle, when he explained his lack of knowledge, the government decided that he was lying.

In determining whether safety-valve relief properly was denied, we review the district court's findings of fact for clear error and the application of the Sentencing Guidelines to those facts de novo. United States v. Johnson, 375 F.3d 1300, 1301 (11th Cir. 2004) (per curiam). Section § 5C1.2 requires a district court to sentence a defendant in certain drug-possession cases without regard to any statutory minimum sentence if the defendant meets the five criteria under U.S.S.G. § 5C1.2. United States v. Brownlee, 204 F.3d 1302, 1304 (11th Cir. 2000). Section § 2D1.1(b)(9) provides for a two-level decrease in offense level if the

defendant meets the criteria set forth in U.S.S.G. § 5C1.2. The burden is on the defendant to show that he has satisfied all of the safety-valve factors and that the information that he has provided is truthful. United States v. Cruz, 106 F.3d 1553, 1557 (11th Cir. 1997). There is no burden on the government to solicit information from a defendant concerning meeting the safety-valve requirements. United States v. Milkintas, 470 F.3d 1339, 1346-47 (11th Cir. 2006) (per curiam).

To qualify for safety-valve relief, a defendant must truthfully and fully disclose to the government any information within his knowledge "concerning the . . . offenses that were part of the same course of conduct" for which the defendant is being sentenced. U.S.S.G. § 5C1.2(a)(5). A district court cannot apply the safety valve if it determines that the defendant withheld or misrepresented information, even if the information would not have aided further investigation or prosecution if properly disclosed. United States v. Figueroa, 199 F.3d 1281, 1283 (11th Cir. 2000) (per curiam). "[L]ies and omissions do not, as a matter of law, disqualify a defendant from safety-valve relief so long as the defendant makes a complete and truthful proffer not later than the commencement of the sentencing hearing." Brownlee, 204 F.3d at 1305. In determining the honesty of a defendant, the district court must independently assess the facts and may not rely on the

government's assertion of dishonesty. United States v. Espinosa, 172 F.3d 795, 797 (11th Cir. 1999) (per curiam).

Rios-Calle's claim that the district court clearly erred in finding that he was not completely truthful is without merit. Rios-Calle told the government that he was going to give $5,000 to a man whom he did not know, for an uncle, whom he had not seen in thirteen years and with whom he had not spoken for several months, on the belief that the money would be returned by a different unknown individual. R4 at 6-9. It was not clearly erroneous for the district court to conclude that Rios-Calle would not part with a substantial portion of his life savings, $5,000 of the $6,500 he had brought from New York, without knowing to whom he was giving the money, and the identity of the individual who would pay him back. Thus, the district court did not clearly err in concluding that Rios-Calle did not provide all of the information that he knew about his offenses of conviction.

Some of the reasons advanced by the government, such as Rios-Calle's ignorance of his uncle's job, his uncle's address in Medellin, and his cousin's branch of service in the Colombian military, do not concern the "offenses that were part of the same course of conduct" as the crimes with which Rios-Calle was charged. U.S.S.G. § 5C1.2(a)(5). Further, the government's assertion, that Rios-

9

Calle should have told his uncle that Rios-Calle had a prior conviction and was on bond, does not seem related to whether Rios-Calle completely informed the government of what he knew. Nonetheless, Rios-Calle's omissions do suggest that Rios-Calle was not completely truthful and thus did not qualify for safety-valve relief.

Rios-Calle relies on United States v. Miranda-Santiago, 96 F.3d 517, 529 (1st Cir. 1996), in which the First Circuit held that it was error to find that the defendant knew more than she was telling to the government based only on the fact that the defendant lived with a more culpable codefedant. In this case, Rios-Calle's asserted ignorance of how he would be repaid creates a direct inference, not speculation, that he knew more information than he had told the government. Rios-Calle relies on United States v. Brack, 188 F.3d 748, 762-63 (7th Cir. 1999), in which the Seventh Circuit held that the defendant's written statement inviting the government to interview him, combined with the government's refusal to meet with him satisfied the safety-valve disclosure requirements. Id. at 763. In this case, Rios-Calle declined to speak to the government after he was given multiple opportunities to tell all that he knew, including a continuance of his sentencing hearing, and a recess of his sentencing hearing. Significantly, both cases relied

10

upon by Rios-Calle are only persuasive authority. Therefore, Rios-Calle did not meet the safety-valve requirements, as the district court concluded.

## III. CONCLUSION

Rios-Calle has appealed his 120-month sentence imposed for conspiring to possess heroin with intent to distribute and attempting to possess heroin with intent to distribute. The district court did not clearly err in finding that Rios-Calle failed to meet his burden of proving that he qualified for safety-valve relief because the substantive facts about which Rios-Calle asserted ignorance gave rise to an inference that Rios-Calle was not being completely truthful. Accordingly, Rios-Calle's sentence is **AFFIRMED**.