**UNITED STATES of America, Appellee**

**v.**

**Eddie J. MATHIS, Appellant**

**United States of America, Appellee**

**v.**

**Maurice T. Lee, Appellant**

United States of America, Appellee

v.

Walter Mathis, Appellant

Nos. 99–3012 to 99–3014.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 14, 2000.

Decided June 30, 2000

David Schertler argued the cause for appellant Eddie J. Mathis. Barry Coburn, appointed by the court, was on brief.

Adam H. Kurland, appointed by the court, argued the cause for appellant Maurice T. Lee.

Mary M. Petras, appointed by the court, argued the cause for appellant Walter Mathis.

Barbara J. Valliere, Assistant United States Attorney, argued the cause for the appellee. Wilma A. Lewis, United States Attorney, and John R. Fisher, William M. Blier and Valinda Jones, Assistant United States Attorneys were on brief.

Before: GINSBURG, HENDERSON and ROGERS, Circuit Judges.

Opinion for the court filed by Circuit Judge KAREN LECRAFT HENDERSON.

KAREN LECRAFT HENDERSON, Circuit Judge:

Appellants Eddie Mathis, Walter Mathis and Maurice Lee were convicted on a single count of conspiracy to distribute and possess with the intent to distribute heroin and cocaine in violation of 21 U.S.C. § 846. The appellants challenge their convictions, claiming that the government's evidence at trial proved multiple conspiracies and that the variance between the single conspiracy charge on which they were indicted and the evidence against them substantially prejudiced them. Additionally, Walter Mathis claims that the district court erroneously admitted other crimes evidence at trial and committed two sentencing errors. Appellants Eddie Mathis and Lee also challenge the district court's application of the United States Sentencing Guidelines (Guidelines) in sentencing them. Finally, Lee claims that the district court erroneously admitted his handgun and certain legal documents into evidence. We conclude that while the government's conspiracy evidence varied from the conspiracy charged, the variance did not substantially prejudice the appellants. We affirm the district court in all other respects except for its application of section 4A1.1(d) of the Guidelines in sentencing Walter Mathis. Accordingly, we affirm all three appellants' convictions and Eddie Mathis's and Lee's sentences but vacate Walter Mathis's sentence and remand to the district court to resentence him in accordance with this opinion.

## I.

Viewed most favorably to the government, *see United States v. Thomas,* 114 F.3d 228, 244 (D.C.Cir.1997), the evidence showed that in about May 1996 Eddie Mathis, with his nephew Lee's assistance, reestablished a preexisting drug distribution network. Eddie Mathis obtained co-

caine and heroin from different suppliers and sold it to Eugene Matthews, who then resold it on the streets of the District of Columbia (District). On September 18, 1996 Eddie Mathis's brother, Walter Mathis, finished his parole term and "between September and October" of 1996 joined the conspiracy by delivering an ounce of heroin to Matthews. Trial Tr. 4/30/98 at 128. During this time, agents of the Drug Enforcement Administration (DEA) were investigating another cocaine dealer, Robert Andrews (Eddie Mathis's father-in-law). By wiretapping Andrews's telephones, DEA agents learned that Andrews and Eddie Mathis shared the same New York drug supplier, Miguel Franklin Castro. Andrews had introduced Eddie Mathis to Castro's initial courier, Elias Rodriguez, to whom Eddie Mathis expressed an interest "in dealing with heroin." Trial Tr. 5/6/98 (a.m.) at 56. Andrews and Eddie Mathis pooled their money to buy enough cocaine and heroin from Castro (through Rodriguez) to make it "worth it for [Rodriguez] to come" to the District. Trial Tr. 5/6/98 (p.m.) at 12. Castro's new courier, Vladimir Perez, at first delivered the drugs to Andrews's house and also delivered cocaine and heroin to Harold Corbett, another drug dealer operating in the District. Soon Eddie Mathis himself ordered heroin from Castro.

On March 8, 1997 DEA agents, acting undercover, ordered 250 grams of heroin from Andrews. After Perez delivered the heroin, the police arrested both Andrews and Perez. They pleaded guilty and Perez identified Castro, Rodriguez and Eddie Mathis as coconspirators. On July 9, 1997 DEA agents arrested Castro as he was preparing to sell Eddie Mathis 300 grams of heroin. Castro pleaded guilty to drug trafficking charges and cooperated with the DEA by making several monitored telephone calls to Eddie Mathis to arrange a drug deal. Castro arranged a heroin sale to Eddie Mathis. Eddie Mathis dispatched Lee to purchase the heroin and a DEA agent arrested Lee on August 20, 1997. DEA agents were unable to arrest Eddie Mathis before he went into hiding but they subsequently filed a complaint against him and obtained a warrant for his arrest.

Meanwhile, in July 1997 Eddie Mathis contacted Rodney Patterson and Terry Kelton, who were then inmates at the United States Penitentiary in Lewisburg, Pennsylvania, about arranging a drug transaction. Patterson and Kelton introduced Eddie Mathis to Peter Coley, a fellow inmate. Unbeknownst to Eddie Mathis, Coley had agreed to assist DEA agents in setting up a drug sale to Eddie Mathis. Through monitored telephone calls, Coley spoke to Eddie and Walter Mathis several times. With the help of DEA agent Samuel Bates, Coley arranged a drug transaction at the Landover Mall in Landover, Maryland. On November 5, 1997 Bates and an undercover Baltimore City Police detective, carrying a five kilogram package of sham cocaine, met Walter Mathis and Dee Smith at the Landover Mall. Walter Mathis then dispatched Smith, who drove a gold and tan Geo vehicle, to pick up Eddie Mathis. Eddie Mathis arrived at the Mall fifteen minutes later. Smith then left the Mall in his Geo. Bates showed Eddie Mathis the cocaine, who replied "Okay," and DEA agents then arrested both Eddie and Walter Mathis. Trial Tr. 5/12/98 at 148. Less than an hour later DEA agents spotted Smith's gold and tan Geo parked in front of the Glenarden Apartments adjacent to the Landover Mall. Inside an apartment the officers found and searched Smith, recovering a semiautomatic handgun magazine. In the glove compartment of the Geo the officers recovered Smith's loaded semiautomatic handgun. A search of Smith's apartment uncovered copies of court documents related to Lee which Lee had mailed to a Maryland post office box and letters from Kelton to Smith regarding Lee's court proceedings.

The government secured a six-count indictment against Eddie Mathis, Walter Mathis, Lee and Rodriguez, charging each of them with one count of conspiracy to distribute and possess with the intent to distribute heroin and cocaine in violation of 21 U.S.C. § 846. Additionally, Eddie Mathis was charged individually with two counts of possession of heroin with intent to distribute and one count of possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(B)(i); he and Lee were jointly charged with one count of possession of heroin with intent to distribute in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(B)(i). Eddie Mathis was also charged with one count of conspiracy to launder money in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(B)(ii). On May 22, 1998 a jury found Eddie and Walter Mathis and Lee guilty of conspiracy.[1] After the district court sentenced the appellants, they filed their timely appeals.

## II.

The indictment charged Eddie and Walter Mathis and Lee with participating in a single conspiracy to possess and distribute cocaine and heroin from "at least in or about May 1996 to on or about November 5, 1997." Indictment at 1. The appellants concede that the evidence establishes a conspiracy among themselves, Castro, Rodriguez, Perez and Matthews (the Mathis–Castro conspiracy) but contend it ended with Lee's arrest on August 20, 1997,[2] after which date all participants except Eddie and Walter Mathis were under arrest. They contend that evidence of the transaction culminating in the November 5 reverse sting involving Coley and the Mathises constituted a separate conspiracy (the Mathis–Coley conspiracy) which materially varied from the conspiracy on which they were indicted. In addition, Eddie

Mathis contends that evidence of Castro's drug deliveries to Andrews involved a separate conspiracy (the Andrews–Castro conspiracy) from the Mathis–Castro conspiracy.

### A. Variance

■ In order to establish that a variance between the indictment and the evidence requires a reversal of their convictions, the appellants must demonstrate

> (1) that the evidence at trial established the existence of multiple conspiracies, rather than the one conspiracy alleged in the indictment, and
> (2) that because of the multiplicity of defendants and conspiracies, the jury was substantially likely to transfer evidence from one conspiracy to a defendant involved in another.

*United States v. Gaviria,* 116 F.3d 1498, 1516 (D.C.Cir.1997) (quotation omitted). To determine whether the evidence supports a single conspiracy as opposed to multiple conspiracies, the court, viewing the evidence in the light most favorable to the government, *see Thomas,* 114 F.3d at 244, looks at "whether the defendants shared a common goal, any interdependence among the participants, and any overlap among the participants in the allegedly separate conspiracies." *Gaviria,* 116 F.3d at 1533 (citation omitted). The participants shared a common goal to distribute drugs for profit in the District. Furthermore, Eddie and Walter Mathis's involvement with participants Castro, Andrews and Coley established coconspirator overlap. *See id.* at 1533 (overlap satisfied when main conspirator works with all participants); *United States v. Gatling,* 96 F.3d 1511, 1520 (D.C.Cir.1996)

---

**1.** Eddie Mathis was convicted on two counts and Lee on one count of possession of heroin with intent to distribute in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(B)(i). Eddie Mathis was also convicted of money laundering in violation of 18 U.S.C.

§ 1956(a)(1)(B)(i). The jury acquitted him on the two remaining counts against him and also acquitted Rodriguez of conspiracy.

**2.** All dates occurred in 1997 unless otherwise noted.

(overlap satisfied when "main figures" are involved in all alleged schemes).

■ The government, however, did not show the participants' interdependence in a single conspiracy. It established a "hub" conspiracy consisting of appellants Eddie and Walter Mathis and Lee.[3] To further their conspiracy the appellants obtained drugs from different suppliers including Castro, Andrews and Coley. Each supplier became a separate "spoke" of the hub.[4] But "[w]ithout a rim to enclose the spokes, . . . the evidence ma[kes] out multiple conspiracies, not the single one alleged." *United States v. Tarantino*, 846 F.2d 1384, 1392 (D.C.Cir.1988) (citing *Kotteakos v. United States*, 328 U.S. 750, 755, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)). At oral argument the government described the rim enclosing the supplier spokes as the common goal to sell illegal drugs in the District. According to the government, it needed to show interdependence only among the hub sellers, not among the spoke suppliers. *See* Appellee's Br. 24. Our caselaw, however, teaches that competing spoke suppliers in a hub conspiracy must not only have a connection to the hub sellers[5] but must also have interdependence among each other in order to form a rim and constitute a single conspiracy. In *United States v. Graham*, 83 F.3d 1466 (D.C.Cir.1996), the government established the operation of the "Newton Street Crew," a cocaine trafficking organization consisting of three different "cliques" or groups of people selling drugs together. The three defendants charged with conspiracy were members of the same clique but the government used evidence of the entire drug operation, including all three cliques, to establish the conspiracy. The court analyzed the connections among the three drug cliques in concluding that the evidence "was sufficient for a reasonable juror to conclude that . . . the cliques were dependent on each other." *Graham*, 83 F.3d at 1472; *see also United States v. Anderson*, 39 F.3d 331, 347 (D.C.Cir.1994), *rev'd in part en banc*, 59 F.3d 1323 (D.C.Cir.1995) (core hub conspiracy with various unrelated suppliers "likely . . . varied from the indictment's conspiracy count") (citing *United States v. Townsend*, 924 F.2d 1385, 1395–1402 (7th Cir.1991) (conspiracy requires interdependency among competing suppliers)). Although "fairly minimal" evidence may establish interdependency, *Gatling*, 96 F.3d at 1522, some connection among competing spoke suppliers in a hub conspiracy must exist in order to constitute one conspiracy. With the foregoing in mind, we must determine whether spoke suppliers Andrews, Castro and Coley were interdependent.

The evidence supports Andrews's involvement not solely with Eddie Mathis but also with Castro. Andrews introduced Eddie Mathis to Castro and DEA surveillance of Andrews uncovered Eddie Mathis's subsequent connection with Castro. Furthermore, according to Castro, Eddie Mathis relied on Andrews as an initial critical link to order heroin from Castro. Finally, Castro delivered drugs to both Andrews and Eddie Mathis at Andrews's house. This evidence is more than sufficient for a reasonable juror to conclude that Andrews had the requisite connection to competing supplier Castro and thus participated in the Mathis–Castro conspiracy. *See Graham*, 83 F.3d at 1471 (finding interdependency among cliques that purchased and distributed drugs together).

The evidence does not, however, manifest a connection between Coley and either

---

3. The "hub" is "the focal, key or central member[s] of a wheel conspiracy." *United States v. Flood*, 965 F.2d 505, 509 (7th Cir. 1992).

4. The "spokes" are the hub's "associates" who are involved in individual transactions and "know that they are working for the

hub." *United States v. Payne*, 99 F.3d 1273, 1279 n. 5 (5th Cir.1996).

5. The government does not dispute that interdependence must exist between the spoke suppliers and the hub conspiracy. *See* Appellee's Br. 24.

Castro or Andrews. The government does not point us to evidence of such a connection, apparently assuming that interdependency among suppliers is not required. With no connection between Coley and either Castro or Andrews, however, we conclude that the Mathis brothers' transaction with Coley constituted a separate conspiracy, the Mathis–Coley conspiracy. Accordingly, the government's evidence regarding Coley and the November 5 reverse sting varied from the Mathis–Castro conspiracy charged in the indictment.

■■■ In order to reverse their convictions, however, the appellants must show that the variance "substantially prejudiced" them through "spillover prejudice." *Gaviria*, 116 F.3d at 1533. Substantial prejudice occurs when multiple defendants are charged with a large and complex conspiracy and spillover prejudice confuses the jurors. *See United States v. Stewart*, 104 F.3d 1377, 1382 (D.C.Cir.1997) (trial of multiple defendants increases "danger that, due to 'spillover' effects, appellant might be found guilty based on evidence properly admitted only against someone else"). The record here does not suggest such spillover prejudice or jury confusion. First, the risk of "spillover prejudice . . . is less likely the fewer the defendants." *Gaviria*, 116 F.3d at 1533 (no risk of prejudice with four charged defendants); *see also Anderson*, 39 F.3d at 348 (no risk of prejudice with ten charged defendants). Here, as in *Gaviria*, the government indicted only four defendants. Second, the government introduced tape recordings of conversations among Eddie Mathis, Castro and Andrews and among Eddie and Walter Mathis and Coley. The government also used a videotape of Lee selling drugs. The jury, therefore, had " 'no need to look beyond each defendant's own words in order to convict.' " *Gaviria*, 116 F.3d at 1533 (quoting *Anderson*, 39 F.3d at 348). Third, Eddie and Walter Mathis played roles in both the Mathis–Castro and the Mathis–Coley conspiracies. *See id.* Finally, the district court instructed the jury that it could convict only if the evidence supported one conspiracy instead of two. *See* Trial Tr. 5/20/98 at 32. Neither the Mathis brothers nor Lee objected to the jury charge, *see id.*, and they therefore bear a "heavy burden of showing substantial prejudice" because the "jury is presumed to follow a trial court's instructions." *United States v. Jackson*, 627 F.2d 1198, 1213 (D.C.Cir.1980) (citations omitted). In sum, although we find a variance between the indictment charging a single conspiracy and the trial evidence indicating more than one conspiracy, we conclude the variance did not substantially prejudice the appellants.[6]

### B. Walter Mathis

■■■ The indictment charged only one conspiracy (the Mathis–Castro conspiracy); the government's evidence of the Mathis–Coley conspiracy therefore constituted "other crimes" evidence under Federal Rule of Evidence 404(b), and, Walter Mathis claims, was improperly admitted.[7] We review the district court's admission of

---

6. Eddie Mathis also argues that evidence of Castro's drug sales to another dealer, Corbett, established a separate conspiracy. Corbett obtained drugs initially from Andrews and later from Castro, *see* Trial Tr. 5/5/98 (a.m.) at 37, thus showing interdependency among the Mathis–Castro conspiracy participants. *See Graham*, 83 F.3d at 1472. There is no evidence, however, linking Corbett (as a spoke or otherwise) in the Mathis–Castro hub conspiracy including Eddie and Walter Mathis and Lee. Assuming without deciding that Corbett's involvement with Andrews and Castro indicates a separate conspiracy, we conclude that the evidence of that conspiracy was not substantially prejudicial to Eddie Mathis. *See Anderson*, 39 F.3d at 348.

7. Walter Mathis contends for the first time on appeal that, because of the variance, the government's indictment joined two conspiracies and was therefore duplicative. This argument is waived, however, because defenses based on " 'defects in the indictment' . . . are waived under [Federal Rule of Criminal Procedure] 12(f) if not raised prior to trial." *United States v. Weathers*, 186 F.3d 948, 952 (D.C.Cir.1999) (quoting Fed.R.Crim.P. 12(b)).

"other crimes" evidence for abuse of discretion. *Graham,* 83 F.3d at 1472. Evidence of an uncharged crime or bad act is admissible if it is relevant,[8] probative of a material issue (such as intent) other than the defendant's character[9] and its probative value is not substantially outweighed by its prejudicial effect.[10] *See Gaviria,* 116 F.3d at 1532. In a conspiracy prosecution, the government is usually allowed considerable leeway in offering evidence of other offenses "to inform the jury of the background of the conspiracy charged, to complete the story of the crimes charged, and to help explain to the jury how the illegal relationship between the participants in the crime developed."[11] *United States v. Williams,* 205 F.3d 23, 33–34 (2d Cir.2000) (internal quotation marks and quotation omitted). Evidence of the Mathis–Coley conspiracy was relevant to show Walter Mathis's intent to act in concert with his brother Eddie Mathis to possess drugs with the intent to distribute them. Furthermore, the probative value of the Mathis–Coley conspiracy is not "substantially outweighed" by its prejudicial effect. Evidence tending to demonstrate "intent, plan, preparation, and motive . . . is particularly probative where the government has alleged conspiracy," *United States v. Sampol,* 636 F.2d 621, 659 & n. 23 (D.C.Cir. 1980) (citations omitted), and as discussed *supra,* evidence of the Mathis–Coley conspiracy did not substantially prejudice Walter Mathis. In light of the government's recognized latitude in using other crimes evidence in a conspiracy prosecution and the probative value of the Mathis–Coley conspiracy to show intent, we conclude that the district court did not abuse its discretion in admitting evidence of the Mathis–Coley conspiracy.

 Walter Mathis also raises two challenges under the Guidelines. First, he claims that the district court erroneously failed to apply section 3B1.2(b) which provides a two-level reduction for a "minor participant," defined as "any participant who is less culpable than most other participants." U.S.S.G. § 3B1.2, Application Note 3. A minor participant's relevant conduct must involve more than one participant and " 'culpability for such conduct [must be] relatively minor compared to that of the other participant(s).' " *United States v. Edwards,* 98 F.3d 1364, 1370 (D.C.Cir.1996) (quoting *United States v. Caballero,* 936 F.2d 1292, 1299 (D.C.Cir. 1991)). Walter Mathis contends that his role in the Mathis–Castro conspiracy was similar to Lee's (who did receive the minor participant reduction) and therefore the district court erroneously found that his was not a "relatively minor" role compared to the other participants' roles. Because "[t]he application of section 3B1.2 is inherently fact-bound" it is "largely committed to the discretion of the trial judge." *Caballero,* 936 F.2d at 1299. Ultimately, we uphold the district court's findings of fact unless "clearly erroneous." *United States v. Bridges,* 175 F.3d 1062, 1065 (D.C.Cir. 1999).

8. "Relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401.

9. In pertinent part, Federal Rule of Evidence 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of . . . intent, . . . plan. . . .

10. Federal Rule of Evidence 403 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

11. We note that "the principles governing what is commonly referred to as other crimes evidence are the same whether the conduct occurs before or after the offense charged." *United States v. Latney,* 108 F.3d 1446, 1449 (D.C.Cir.1997).

■ The district court decided Lee was a minor participant because he "was used only as a messenger" or a "gopher" in small deals. Sentencing Tr. 1/6/99 at 72. Lee did not play "a role in the planning of the criminal enterprise." *Id.* at 73. Walter Mathis, on the other hand, participated in a series of telephone calls in which he, Eddie Mathis and others "planned, discussed and arranged for the delivery of 5 kilograms of cocaine," which was "the largest single delivery of drugs in the whole case." *Id.* at 47–48. Although we have concluded that the November 5 reverse sting was not part of the offense of conviction, the district court may nonetheless consider it at sentencing as relevant conduct. *See United States v. Drew,* 200 F.3d 871, 879 (D.C.Cir.2000) (citing *Nichols v. United States,* 511 U.S. 738, 747, 114 S.Ct. 1921, 128 L.Ed.2d 745 (1994)). The district court correctly considered Walter Mathis's relevant conduct in the November 5 reverse sting and, accordingly, it did not clearly err in failing to apply section 3B1.2(b)'s minor participant reduction to him notwithstanding its treatment of Lee to the contrary.

Finally, Walter Mathis contends that the district court erroneously applied section 4A1.1(d)'s two-point increase to his offense level because the government did not prove by a preponderance of the evidence that he was on parole at the time of his offense.[12] In view of the government's concession,[13] we conclude that the district court clearly erred in this factual determination and we remand for resentencing because of the incorrect addition of a two-level adjustment under section 4A1.1(d). *See Drew,* 200 F.3d at 874.

### C. Eddie Mathis

■ Eddie Mathis also challenges the district court's application of section

2D1.1(b)(1) of the Guidelines providing a two-level increase "[i]f a dangerous weapon (including a firearm) was possessed" during a drug offense. The weapon need not be used, but merely "present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1, Application Note 3; *see United States v. Burke,* 888 F.2d 862, 869 (D.C.Cir.1989) (section 2D1.1(b)(1) does not require that defendant "used or would have used the firearm"). Within one hour of arresting Eddie and Walter Mathis during the November 5 reverse sting, DEA agents arrested Smith carrying ammunition and discovered his loaded handgun in the glove compartment of the Geo he had driven from the crime scene. Furthermore, it was foreseeable to Eddie Mathis that his coconspirator Smith would be carrying a firearm in view of the fact that Eddie and Walter Mathis were purchasing five kilograms of cocaine for $75,000 from a stranger. *See United States v. Childress,* 58 F.3d 693, 725 (D.C.Cir.1995) (coconspirator's possession of handgun reasonably foreseeable when conspirators "handled a substantial quantity of drugs and money"). Because the district court's finding that Smith possessed the firearm at the shopping mall where the reverse sting took place, *see* Sentencing Tr. 1/6/99 at 37–38, is supported by a preponderance of the evidence and because Smith's possession was reasonably foreseeable, we conclude that the district court did not clearly err in applying section 2D1.1(b)(2)'s two-level increase to Eddie Mathis's sentence calculation.

### D. Lee

■ Lee challenges his conviction, claiming that the district court improperly admitted evidence at trial.[14] We review

---

**12.** Section 4A1.1(d) provides a two point increase "if the defendant committed the instant offense while under any criminal justice sentence, including ... parole."

**13.** "[W]e concede that the record does not show by a preponderance that appellant com-

mitted the offense while on parole." Appellee's Br. 48.

**14.** In passing, Lee asserts that the prosecutor improperly argued during closing that the goal of the conspiracy was "selling drugs for

the district court's evidentiary rulings for abuse of discretion. *See United States v. Williams*, 212 F.3d 1305, 1308–09 (D.C.Cir. 2000). The improper admission of evidence is harmless unless the reviewing court determines that the defendant was substantially prejudiced thereby. *See United States v. Small*, 74 F.3d 1276, 1280 (D.C.Cir.1996). First, Lee contends that the district court improperly admitted into evidence the handgun he possessed on July 17, 1996 because it later determined at sentencing that there was "no evidence this gun was carried by Lee for the purpose of furthering the ends of the drug conspiracy." Sentencing Tr. 1/6/99 at 72. The district court's determination at sentencing, however, does not automatically equate to inadmissibility at trial because the two rulings apply different standards. The court admitted Lee's handgun at trial under the "relevant evidence" standard of Federal Rule of Evidence 402. *See supra* n. 8. "Relevant evidence" need only *tend* to make the existence of a fact "of consequence" more or less probable. The standard applicable to the court's ruling at sentencing, however, is preponderance of the evidence, that is, "evidence which as a whole shows that the fact sought to be proved is more probable than not.... '[P]reponderance' means something more than 'weight'; it denotes a superiority of weight, or outweighing." *United States v. Montague*, 40 F.3d 1251, 1255 & n. 2 (D.C.Cir.1994) (internal quotation marks and quotation omitted). Lee's possession of the handgun, although not directly furthering the Mathis–Castro conspiracy, may have nonetheless constituted relevant evidence. *See In re Sealed Case*, 105 F.3d 1460, 1463 (D.C.Cir.1997) (guns are common "tools of the trade" for drug dealers) (quotation omitted). In *United States v. Payne*, 805 F.2d 1062 (D.C.Cir.1986), the court held that the defendant's gun seized at the time and place of a drug transaction was admissible as drug paraphernalia.

*See Payne*, 805 F.2d at 1066 n. 5. Although Lee's gun was not found at the time drugs were bought or sold, it was found during the existence of the Mathis–Castro conspiracy. In addition, the government did not mention Lee's handgun in closing, thus mitigating any negative effect. Furthermore, the government introduced a videotape of Lee selling drugs as part of the Mathis–Castro conspiracy. In view of this uncontroverted evidence of Lee's involvement in the conspiracy, we conclude that the district court's admission of Lee's handgun, if error, was nevertheless harmless. *See United States v. Olano*, 507 U.S. 725, 734–35, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (non-prejudicial harmless error not grounds for reversal).

■ Lee's contention that the district court improperly admitted into evidence certain legal documents related to his case similarly lacks merit. The documents, which included redacted copies of the criminal complaints filed against Lee, *see* Government Exhibits 610R, 611R, 612R & 613R, bore Lee's name, were found in Smith's apartment and showed that Lee maintained a "continuing connection" with Eddie Mathis even after his (Lee's) arrest. Trial Tr. 5/13/98 (p.m.) at 14. Although at sentencing the court found that Lee's participation "ended with his arrest on August 20, 1997," Sentencing Tr. 1/6/99 at 72, it did not abuse its discretion in admitting these documents at trial because they were relevant to show Lee's continued connection with Eddie Mathis. Even if the court did err in admitting the redacted documents, the documents contained no substantially prejudicial information and therefore any error was harmless.

■ Finally, Lee challenges the district court's application of the Guidelines, claiming that it erroneously failed to apply section 5C1.2's safety valve provi-

profit in the District of Columbia." Trial Tr. 5/19/98 at 3. We need not address this "'asserted but unanalyzed' argument." *SEC v.*

*Banner Fund Int'l*, 211 F.3d 602, 613 (D.C.Cir.2000) (quoting *Carducci v. Regan*, 714 F.2d 171, 177 (D.C.Cir.1983)).

sion.[15] Lee bears the burden to establish by a preponderance of the evidence that he is entitled to safety valve relief. *See United States v. White*, 1 F.3d 13, 18 (D.C.Cir. 1993) ("defendant properly bears the burden of proof under those sections of the Guidelines that define mitigating factors") (internal quotation marks and quotation omitted). Only the last of section 5C1.2's five criteria is pertinent here, requiring that:

> (5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

*See also* 18 U.S.C. § 3553(f)(5). Lee argued below that he satisfied section 5C1.2(5) notwithstanding he had no useful information to provide the government. Lee, however, did not proffer any information, useful or not. On appeal, Lee claims that a proffer would have been futile because the government stated at sentencing that "at this point, post trial, it certainly wouldn't be a productive debriefing." Sentencing Tr. 1/6/99 at 68. Nevertheless, Lee cannot avoid his affirmative disclosure obligation merely because the government suggests a debriefing would be unproductive. *See United States v. Ivester*, 75 F.3d 182, 184–85 (4th Cir.1996) ("[D]efendants seeking to avail themselves of downward departures under § 3553(f) bear the burden of affirmatively acting."). Because Lee failed to proffer information of any kind to the government, we conclude that

the district court did not clearly err by not applying section 5C1.2.

For the foregoing reasons, we affirm the convictions of Eddie Mathis, Walter Mathis and Maurice Lee. In addition we affirm the sentences imposed on Eddie Mathis and Maurice Lee but remand to the district court to resentence Walter Mathis in accordance with this opinion.

*So ordered.*

---

**15.** Section 5C1.2 provides that if five criteria set out in 18 U.S.C. § 3553(f)(1)-(5) are met, "[i]n the case of an offense under 21 U.S.C. § 841, ... [or] § 846 ..., the court shall impose a sentence in accordance with the applicable guidelines without regard to any statutory minimum sentence."