Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued December 7, 2010        Decided January 14, 2011

No. 09-3052

UNITED STATES OF AMERICA,
APPELLEE

v.

RASHAAD G. TATE, ALSO KNOWN AS RAH,
APPELLANT

Consolidated with No. 09-3055

Appeals from the United States District Court
for the District of Columbia
(No. 1:08-cr-00312)

*Sandra G. Roland*, Assistant Federal Public Defender, argued the cause for appellant Rashaad G. Tate. With her on the briefs was *A. J. Kramer*, Federal Public Defender. *Neil H. Jaffee*, Assistant Federal Public Defender, entered an appearance.

*Kavita Kumar Puri* argued the cause for appellant Richard E. Young.  With her on the brief were *Justin S. Antonipillai*, appointed by the court, and *Wells C. Bennett*.

*Benjamin L. Eisman*, Assistant U.S. Attorney, argued the cause for appellee.  With him on the brief were *Ronald C. Machen Jr.*, U.S. Attorney, and *Elizabeth Trosman*, *Chrisellen R. Kolb*, and *Gregory G. Marshall*, Assistant U.S. Attorneys.  *Roy W. McLeese III*, Assistant U.S. Attorney, entered an appearance.

Before: ROGERS, TATEL and KAVANAUGH, *Circuit Judges*.

Opinion for the Court by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: Appellants Rashaad G. Tate and Richard E. Young challenge their sentences and seek remands for resentencing.  Upon reviewing the requirements of Rule 51 of the Federal Rules of Criminal Procedure for preserving error and 18 U.S.C. § 3553(a) for sentencing defendants, and of 18 U.S.C. § 3553(f)(5) for eligibility for safety-valve sentencing, we affirm.

## I.

Tate and Young were indicted on a single count of unlawful distribution of five grams or more of cocaine base on May 6, 2008, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(iii), and 18 U.S.C. § 2.  Tate was also indicted for the same offense committed on May 14, 2008.

The government's evidentiary proffers stated that on May 6, 2008, a confidential informant had called Tate about purchasing 62 grams of crack cocaine.  Tate said he would contact Young, and later told the informant where and when to

meet Young. When the meeting occurred Young told the confidential informant that he did not have 62 grams at that time and sold 34.3 grams to the informant for $1,200. On May 14, 2008, Tate sold the confidential informant an additional 29.1 grams of cocaine base for $1,000. The proffer regarding Tate also referred to the May 14, 2008 sale and to 178 cell-phone conversations between Tate and Young between April 25, and May 7, 2008. Each proffer stated that it was "not intended to constitute a complete statement of all facts known by [each] defendant or the Government, but is a minimum statement of facts intended to provide the necessary factual predicate for the guilty plea[s]."

Tate pleaded guilty to a single count and was sentenced to 100 months' imprisonment and 48 months' supervised release, and was ordered to pay a $100 special assessment. Young also pleaded guilty and was sentenced to the mandatory minimum of 60 months' imprisonment and 60 months' supervised release, and was ordered to pay a $100 special assessment.

**II.**

Tate contends that he is entitled to a remand for resentencing on three grounds of procedural error, because the district court: (1) mistakenly believed that the 2007 amendment to the crack guideline in the United States Sentencing Guidelines ("U.S.S.G.") had reduced the crack-to-powder disparity from 100 to 1 to a disparity "in the neighborhood" of 20 to 1 when the amendment brought the disparity to 70 to 1 as applied to Tate's offense level[1]; (2) believed it lacked discretion

---

[1] The 2007 amendment to the crack cocaine guideline maintained a disparity ranging from 25 to 1 to 80 to 1 depending on the offense level. U.S. SENT'G GUIDELINES MANUAL § 1B1.1 app. C, amdts. 706, 711 (2007); *see Kimbrough v. United States*, 552 U.S. 85, 106 (2007).

to impose a non-guideline sentence based solely on its policy disagreement with the crack-to-powder disparity; and (3) imposed a greater sentence than was necessary on the assumption that the crack guideline would change in the future and that the court would have the opportunity to "redo" the sentence. Tate does not contend his sentence was substantively unreasonable, and he acknowledges that his third claim is raised for the first time on appeal and reviewable only for plain error. The government maintains that all of Tate's challenges are advanced "for the first time on appeal," Appellee's Br. 24, and therefore subject to plain error review, *see* FED. R. CRIM. P. 52(b); *United States v. Coles*, 403 F.3d 764, 767 (D.C. Cir. 2005), which he fails to show.

Rule 51 of the Federal Rules of Criminal Procedure provides, in relevant part, that exceptions to the district court's rulings or orders are unnecessary, and that claims of error are preserved when a party informs the district court of the requested action, or of the objection and the grounds therefor.[2] *United States v. Wilson*, 605 F.3d 985, 1022 (D.C. Cir. 2010). The point of requiring objections to be made at the time of sentencing is to afford the district court the opportunity to consider them, not to clutter the proceedings with needless

---

[2] Rule 51 provides, in relevant part:
> (a) Exceptions Unnecessary. Exceptions to rulings or orders of the court are unnecessary.
> (b) Preserving a Claim of Error. A party may preserve a claim of error by informing the court – when the court ruling or order is made or sought – of the action the party wishes the court to take, or the party's objection to the court's action and the grounds for that objection. * * * *

FED. R. CRIM. P. 51.

objections after the district court has ruled. *In re Sealed Case*, 349 F.3d 685, 690 n.2 (D.C. Cir. 2003). Indeed, Rule 51(b) was adopted in part to eliminate the necessity of redundant exceptions to rulings. 3B CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 841 (3d ed. 2004). Thus, in *United States v. Rashad*, 396 F.3d 398, 401 (D.C. Cir. 2005), the court stated that "[a]ll a defendant need do to preserve a claim of error . . . is inform the [district] court and opposing counsel of the ruling he wants the court to make and the ground for so doing." Other circuits have adopted similar approaches to this long-standing rule. In *United States v. Ortiz*, 431 F.3d 1035, 1039 (7th Cir. 2005), the court stated that "when a defendant consistently disputes an issue, and the district court does not specifically elicit objections to the adequacy of the findings, the defendant is not required to interpose a further objection to the adequacy of the district court's findings after the district court has ruled." So too in *United States v. Castillo*, 430 F.3d 230, 243 (5th Cir. 2005), the court held that where the prosecutor had repeatedly made his position known but never objected to the sentence imposed and the district court had made clear its disagreement with the prosecutor's position, "requiring a formal objection by the prosecutor . . . would have been futile, would not have served the purposes behind requiring contemporaneous objections, and would have clearly 'exalt[ed] form over substance.'"

Tate's counsel informed the district court that he believed the crack-to-powder cocaine disparity was between 60 and 80 to 1, not 20 to 1, and counsel requested imposition of a sentence for Tate no higher than the mandatory minimum pursuant to the district court's discretion to vary from the Guidelines, citing *Spears v. United States*, 129 S. Ct. 840 (2009). Having stated the facts and the law regarding the disparity and having requested that the district court exercise its discretion to sentence Tate based on a different crack-to-powder ratio,

counsel preserved Tate's first two claims of error and counsel was not obligated to object when the district court rejected his request for a sentence at the mandatory minimum. Our review of these claims, therefore, is for abuse of discretion. *See Gall v. United States*, 552 U.S. 38, 46 (2007). Our review of purely legal questions is *de novo*, *see United States v. Bridges*, 175 F.3d 1062, 1065 (D.C. Cir. 1999), for "[a] district court by definition abuses its discretion when it makes an error of law," *Koon v. United States*, 518 U.S. 81, 100 (1996). We review the district court's findings of fact for clear error and accord "due deference" to the district court's application of the Guidelines to found facts. *See United States v. Erazo*, No. 10-3012, slip op. at 5 (D.C. Cir. circulated to the full court December 22, 2010) (internal citations and quotation marks omitted).

Although Tate's first two challenges were properly preserved, he fails to show legal error by the district court on either.

First, prior to accepting his guilty plea, the district court advised Tate that the Guidelines were "just recommendations," and that it would first look to the Guidelines and then proceed to analyze the factors in 18 U.S.C. § 3553(a) to impose a sentence "sufficient but not greater than necessary" to accomplish the goals of sentencing. Tr. 5 (Feb. 27, 2009). When Tate's counsel argued at the sentencing hearing for imposition of the mandatory minimum sentence, the district court challenged counsel's assumption that the disparity between crack and powder cocaine was 100 to 1, noting the Sentencing Commission's amendment to the Guidelines in 2007 and inquiring whether, in view of the two-level reduction in the offense level, the disparity was 20 to 1. Tate's counsel informed the district court that the recalibration had not brought the disparity down to 20 to 1 but "more like between 60 to 80 to 1." Tr. 10 (May 7, 2009). The district court responded, "it's not

exactly 20 to 1 as you point out. But it is in that neighborhood." *Id.*

On the latter sentence, and specifically on the last word, hangs Tate's first claim of error. He contends this statement indicates that the district court misunderstood the applicable law and such a procedural error requires resentencing because at 20 to 1, the applicable guideline range would have been 70 to 87 months' imprisonment, not 100 to 125 months'. Because a 20 to 1 disparity (70–87 months) cannot reasonably be said to be "in the neighborhood of" either 60 or 80 to 1, Tate maintains that the district court erred as a matter of law, and that his sentence is procedurally unreasonable, in violation of due process and the requirement of section 3553(a) that a sentence be no greater than necessary.

The ensuing sentencing proceedings, however, show that unlike in *King v. Hoke*, 825 F.2d 720 (2d Cir. 1987), on which Tate relies, where there was clear evidence that the district court's sentence was motivated by an error of law, *id.* at 722, the district court's motivation for imposing a within-Guidelines sentence of 100 months was based on Tate's escalating criminal conduct within a brief period of time. Considering Tate's counsel's argument for imposition of the mandatory minimum sentence of 60 months' imprisonment, the district court stated:

> the problem I have with your argument is that . . . Mr. Tate was on probation from D.C. when he committed the crime in Maryland. He was on release pending appeal from that crime when he committed these crimes in the District of Columbia. That is so much recidivism in such a short period of time. Talk about somebody who has not quite gotten there yet to have respect for law, and it's that record even more than the quantities [of cocaine] here. The quantities here are

significant as well, but it's the speed of that record that is to me quite alarming and makes it difficult to sentence him to just a mandatory minimum.

Tr. 13–14 (May 7, 2009).[3] The district court noted that Tate had demonstrated "progress" in the seriousness of his crimes. Tr. 22 (May 7, 2009).

The prosecutor agreed that Tate's criminal conduct, as revealed in his record, constituted a "case specific aggravating factor which justifies opposition to variance," and did not warrant the requested "substantial variance . . . from the [G]uidelines," Tr. 16 (May 7, 2009), notwithstanding statements by Executive Branch officials to Congress that the sentencing disparity should be eliminated. The district court confirmed with the prosecutor that the Commission's 2007 amendment had reduced the guideline range from 121–151 months to 100–125

---

[3] According to the government's sentencing memorandum, Tate was convicted in Maryland in 2003 for recklessly driving a vehicle while under influence of alcohol, in the course of which Tate's vehicle struck a police car and led police on a chase at speeds reaching 140 miles per hour. In 2005 he was arrested in the District of Columbia and pleaded guilty to three misdemeanor offenses based on his possession of a semiautomatic weapon with an obliterated serial number, loaded with hollow-point ammunition. Ten months later, while on probation in the District of Columbia, he was arrested in Maryland for possession of another loaded semiautomatic weapon with an obliterated serial number and 63 grams of cocaine packaged in 36 bags; he pleaded guilty in September 2007 to two felony charges of possession with the intent to distribute cocaine and possession of a firearm with a nexus to drug trafficking and was sentenced to concurrent five year terms of imprisonment. Within eight months, while still on probation in the District of Columbia conviction and free on an appeal bond in the Maryland conviction, Tate committed the crimes in the instant case.

months and sentenced Tate to 100 months' imprisonment. Tate thus fails to show a legal error by the district court. *See United States v. Pickett*, 475 F.3d 1347, 1352 (D.C. Cir. 2007).

Second, Tate's related claim that the district court erred by failing to appreciate that it could impose a non-guideline sentence based solely on its disagreement with the crack-to-powder disparity also fails. Tate's counsel cited *Spears*, 129 S. Ct. 840, in urging the district court to exercise its discretion to impose the mandatory minimum sentence. The district court, in reviewing the section 3553(a) factors, expressed concern about the disparity, but recognized that it had discretion to vary below the Guidelines range. It did not vary below the Guidelines, however, in view of Tate's criminal history. That conclusion was not an abuse of discretion as Tate's criminal record supports the district court's finding that it "ha[d] no reasonable basis to depart from the [G]uidelines." Tr. 25 (May 7, 2009).

Finally, Tate fails to show that the district court plainly erred, *see Coles*, 403 F.3d at 767, in stating that it was "acting on the assumption," Tr. 25 (May 7, 2009), that the Sentencing Commission would implement a retroactive amendment to the crack guideline and that it would not oppose resentencing Tate in that event. He relies on cases arising under Federal Rule of Criminal Procedure 35 where, for example in *United States v. Drown*, 942 F.2d 55, 59 (1st Cir. 1991), the proceedings indicated that the prosecutor's strategy to postpone its evaluation of a defendant's assistance until his services were completed in another proceeding "improperly merge[d] the temporal boundaries" of U.S.S.G. § 5K1.1's reward for presentencing assistance and Rule 35's reward of subsequent assistance. In contrast, the record shows that the district court's reason for not imposing the mandatory minimum sentence on Tate was not premised on its future reduction pursuant to Rule 35, as in *United States v. Recla*, 560 F.3d 539, 546 (6th Cir. 2009),

*United States v. Barnette*, 427 F.3d 259, 262 (4th Cir. 2005), and *United States v. Bureau*, 52 F.3d 584, 595 (6th Cir. 1995), but on Tate's "alarming" criminal background. Tr. 14 (May 7, 2009).

## III.

Young, also seeking resentencing, contends that the district court erred in ruling that he was required to debrief the government in order to qualify for safety-valve treatment. Our review of this legal question is *de novo*. *See Erazo*, No. 10-3012, slip op. at 5.

Section 3553(f) of Title 18 provides for a limitation on the applicability of a mandatory minimum sentence where the district court finds that a defendant meets five conditions. At issue here is the fifth condition which provides:

> Not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

18 U.S.C. § 3553(f)(5).

The plain text of the statute does not require a debriefing, i.e., a face-to-face interrogation with government prosecutors. *Id*.; *see* U.S.S.G. § 5C1.2(5). As several circuit courts of appeal have observed, the statute does not specify the form, place, or

manner of disclosure, and a defendant may comply without submitting to a debriefing. *United States v. Altamirano-Quintero*, 511 F.3d 1087, 1092 n.7 (10th Cir. 2007); *United States v. Schreiber*, 191 F.3d 103, 108 (2d Cir. 1999); *United States v. Montanez*, 82 F.3d 520, 522 (1st Cir. 1996). Nor apparently does the legislative history specify a form or place. *United States v. Ramirez*, 94 F.3d 1095, 1100 (7th Cir. 1996); *Montanez*, 82 F.3d at 522. That a proffer of information is written rather than oral is of no consequence because the safety-valve provision focuses on the completeness and truthfulness of the information provided by a defendant. *United States v. Mejia-Pimental*, 477 F.3d 1100, 1107 n.12 (9th Cir. 2007); *United States v. Tournier*, 171 F.3d 645, 647 (8th Cir. 1999). One circuit has suggested that "[a]s a practical matter, a defendant who declines to offer himself for a debriefing takes a very dangerous course" because, for instance, reliance on "a letter runs an obvious and profound risk: The government is perfectly free to point out the suspicious omissions at sentencing, and the district court is entitled to make a common sense judgment." *Montanez*, 82 F.3d at 523. Although "[d]ebriefing by the Government plays an important role in permitting a defendant to comply with the disclosure requirement," it is not a prerequisite to safety-valve consideration. *United States v. Beltran-Ortiz*, 91 F.3d 665, 669 & n.4 (4th Cir. 1996).

The government properly acknowledges on appeal that a debriefing is not required to fulfill the disclosure requirements under section 3553(f)(5). *See* Appellee's Br. 36. Before the district court, however, the government argued that a debriefing was required to qualify for safety-valve sentencing. The district court ruled by order of May 12, 2009 that because "a defendant seeking the benefit of the [s]afety [v]alve must go through the process of talking with he the Government," and Young had not done so, he was not entitled to a sentence below the mandatory

minimum. At the subsequent and final hearing, the district court stated:

> I think that a full debriefing . . . in the normal sense of the word would not be necessarily required, but an affirmative sharing of information [is], what the defendant knows about the crime with which he's been charged and to which he's entered a plea, what he knows about the drugs and sources and things like that must be provided to the government before a defendant is entitled to the safety valve.

Tr. 3–4 (June 2, 2009). Before imposing sentence, the district court inquired whether Young wanted time to think about what he wanted to do. Young's counsel, after conferring with his client, advised the district court that "Mr. Young is ready to go forward with sentencing." *Id.* at 5.

On appeal Young nonetheless contends that the district court imposed an in-person debriefing requirement to qualify for safety-valve sentencing. He points not only to the district court's statement at the initial sentencing hearing but to the district court's statement to Young shortly after the above-quoted statement, in the final minutes of his sentencing hearing, that "you either have to talk to the government, and tell them everything you know, or I will sentence you to the mandatory minimum of 60 months." *Id*. at 4. Young overreads the district court's last statement about his choice. Where the district court had moments before disavowed a debriefing requirement, the words "talk" and "tell," which have less specific definitions than the word "debriefing,"[4] and imply a more informal exchange of

---

[4] According to MERRIAM WEBSTER'S COLLEGIATE DICTIONARY (10th ed. 1993), the word "debrief" means "to interrogate (as a pilot) upon return (as from a mission) in order to obtain useful information." *Id.*

information, could not convey imposition of a formal debriefing requirement. Although the district court might again have made this explicit, the record demonstrates an understanding of usage that is consistent with the district court's disavowal of a debriefing requirement. In Young's presence his counsel had offered at the initial sentencing hearing to "tell the Court" and the prosecutor about Young's other drug sales, Tr. 4 (May 8, 2009), contemplating disclosure in a form other than through a debriefing, a disclosure during a (presumably sealed) hearing before the district court.

Young also contends that but for the asserted debriefing requirement error he would have received safety-valve treatment because his agreement to the government's factual proffer upon entering his guilty plea was all that was required. He acknowledges, however, that he had the burden to establish by a preponderance of evidence that he was entitled to safety-valve relief. *See United States v. Gales*, 603 F.3d 49, 52–53 (D.C. Cir. 2010) (quoting *United States v. Mathis*, 216 F.3d 18, 29 (D.C. Cir. 2000)). Given that he does not dispute that he declined to provide any information to the government, whether by debriefing or otherwise, the district court's conclusion that his stipulation to the government's factual allegations in the plea proffer was neither candid nor complete is not clearly erroneous and its denial of safety-valve sentencing is properly accorded deference.

Generally, a defendant's agreement with the factual allegations in a government plea proffer is considered insufficient to fulfill the requirements of section 3553(f)(5) to the extent it is limited to a recitation of the defendant's own actions in the crime charged, *United States v. Gutierrez-*

at 297. The relevant meaning of "talk" is simply "to convey information or communicate in any way." *Id*. at 1202.

*Maldonado*, 328 F.3d 1018, 1019 (8th Cir. 2003), and fails to disclose information about co-conspirators, *United States v. O'Dell*, 247 F.3d 655, 675–76 (6th Cir. 2001); *United States v. Wrenn*, 66 F.3d 1, 2–3 (1st Cir. 1995), much less about the defendant's chain of distribution, *United States v. Arrington*, 73 F.3d 144, 148 (7th Cir. 1996). In *Gales*, this court took a similar approach, stating that "the  district court . . . was entitled to consider the government's point" that during a debriefing the defendant's inability to identify more concretely his supplier was simply not credible "and make reasonable inferences from the evidence." 603 F.3d at 54 (citing *Montanez*, 82 F.3d 520, where the defendant unsuccessfully relied on a letter to the government about the drug sales while omitting who supplied him with the drugs). In *United States v. Evans*, 216 F.3d 80, 91 (D.C. Cir. 2000), this court affirmed the denial of safety-valve treatment in view of sufficient record evidence that the defendant knew, but had not fully disclosed, *inter alia*, the nature and source of his drug supply. *Accord United States v. Rodriguez*, 69 F.3d 136, 143 (7th Cir. 1995) (same).

Young responds that the district court erred in foreclosing safety-valve sentencing without first finding that the proffer was incomplete, that there was information beyond the proffer in his possession, or that his account was less than credible. Section 3553(f)(5) requires the district court to determine if the defendant has truthfully provided all information. As the First Circuit explained in *United States v. Miranda-Santiago*, 96 F.3d 517 (1st Cir. 1996), where a defendant had offered "a facially plausible tale of limited involvement":

> The government cannot assure success simply by saying, "We don't believe the defendant," and doing nothing more. If it could, it would effectively eliminate the self-conscious difference between the safety valve provision, U.S.S.G. § 5C1.2, which

> obligates the district court to determine if the defendant has truthfully provided all information, and the substantial assistance provision, U.S.S.G. § 5K1.1, which permits, upon the government's motion and at the court's discretion, a downward adjustment for certain defendants who[m] [the government has determined] have provided substantial assistance to the government."

*Id.* at 529 (internal citation omitted); *accord Gales*, 603 F.3d at 52. Further, the court explained, section 3553(f)(5) "does not invite . . . speculation" because "[i]f mere conjecture based on personal relationships could bar application of section 3553(f)(5), [then] in all cases where minor participants knew others more involved, the safety valve provision would be beyond their grasp." *Miranda-Santiago*, 96 F.3d at 529. As this "was not intended by Congress," the court concluded, the district court's "bare conclusion that [the defendant] did not 'cooperate fully,' absent either specific factual findings or easily recognizable support in the record, cannot be enough to thwart [the defendant's] effort to avoid imposition of a mandatory minimum sentence." *Id.* at 529–30.

There is "easily recognizable support in the record," *id*. at 529, for the district court to have been unpersuaded that Young had made a full disclosure in the absence of some form of communication to the government. Although Young's memorandum in aid of sentencing stated that "[t]he government was already aware of the codefendant's drug practices, and therefore, there was nothing new for Mr. Young to report," and that he had "told everything that he knew about the May 6, 2008 sale," Mem. in Aid of Sentencing at 4, drug paraphernalia – Pyrex glasses and a scale coated with white residue – was found during a search of Young's residence. Tr. 11 (Feb. 9, 2009). At the initial sentencing hearing Young's counsel offered to

provide, in exchange for safety-valve sentencing, additional information regarding "the extent of [Young's] drug selling in the District of Columbia." Tr. 4 (May 8, 2009). Indeed, counsel's statement was equivocal in arguing not that Young did not possess information regarding his supplier but that he was not required to provide such information to the government under section 3553(f)(5). *Id*. Additionally, the proffer itself made Young's claim implausible. According to the proffer, Young was able to provide and sell 34.3 grams of crack cocaine within a matter of hours of receiving Tate's call. Young either had information about the source of the drugs he sold to the confidential informant or, alternatively, was in a position to say why he had no such information.

Accordingly, we affirm the judgments of conviction.