# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued December 2, 2011　　　Decided December 27, 2011

No. 10-3094

UNITED STATES OF AMERICA,
APPELLEE

v.

DAVID NANA DANSO,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:09-cr-00281-2)

———

*Jerry Ray Smith Jr.*, appointed by the court, argued the cause and filed the briefs for appellant. *John O. Iweanoge II* and *A. J. Kramer*, Federal Public Defender, entered appearances.

*John L. Hill*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Ronald C. Machen Jr.*, U.S. Attorney, and *Roy W. McLeese III* and *John K. Han*, Assistant U.S. Attorneys.

Before: BROWN, *Circuit Judge*, and WILLIAMS and GINSBURG, *Senior Circuit Judges*.

Opinion for the Court filed by *Senior Circuit Judge* WILLIAMS.

WILLIAMS, *Senior Circuit Judge*:  To be eligible for the so-called "safety-valve" reduction in sentence under 18 U.S.C. § 3553(f), a defendant must "truthfully provide[] to the Government all information and evidence the defendant has concerning the offense."  18 U.S.C. § 3553(f)(5).  Appellant David Danso pleaded guilty to a relatively simple drug deal—he arranged a sale between one supplier and one buyer.  But the deal also involved two samples, one *acquired* for marketing purposes from the supplier of the drugs ultimately sold (but never actually delivered to the buyer here), the other *delivered* to the buyer (but acquired from an apparently unrelated source).  The question is whether Danso could qualify under § 3553(f)(5) without disclosing the fate of the sample provided by the seller but not delivered in this transaction, or the origin of the sample that he did deliver to the buyer.  The district court held that he could not qualify; we agree, and thus affirm.

Danso pleaded guilty to conspiracy to distribute and possess with intent to distribute 100 grams or more of a mixture and substance containing heroin, in violation of 21 U.S.C. §§ 841, 846.  In his factual proffer, he admitted brokering a drug deal between Mouloukou Toure (the supplier) and a confidential witness ("CW") (the purported buyer).  Toure had given Danso a sample of heroin to distribute to potential customers.  But when Danso, Toure, and the CW met to discuss the deal, Danso told Toure he had not given the CW Toure's sample, but rather had used another sample and had told the CW that Toure's heroin was better.  The three then agreed to proceed with the deal; they completed it later that day.

In anticipation of sentencing, the government took the position that Danso, in a special safety-valve debriefing, had not provided all the information required for satisfying § 3553(f)(5). Specifically, it argued that to be eligible Danso should at a minimum have disclosed (1) the identity of the person from whom Danso had received the non-Toure sample, and (2) the identity of the person to whom he gave the Toure sample. Gov't's Mem. in Aid of Sentencing Re: Inapplicability of Safety Valve ¶ 15 (Aug. 19, 2010), Appellant's Appendix ("App.") 37-38.

The district court denied the safety-valve reduction, relying on Danso's failures to provide (among other things) the identities of the non-Toure-sample supplier and the Toure-sample recipient. It concluded that Danso failed to show "that he truthfully revealed what he [knew] about the circumstances of the offense of conviction." Sentencing Tr. 29 (Sept. 8, 2010), App. 88. The court imposed a 60-month sentence, the mandatory minimum under the Sentencing Guidelines in the absence of safety-valve eligibility.

It is the defendant's burden to establish by a preponderance of the evidence that he is entitled to safety-valve relief. *United States v. Mathis*, 216 F.3d 18, 29 (D.C. Cir. 2000). We review the district court's legal conclusions *de novo*, and its factual findings, including credibility determinations, for clear error. See *In re Sealed Case*, 105 F.3d 1460, 1462 (D.C. Cir. 1997); *United States v. Gales*, 603 F.3d 49, 53 (D.C. Cir. 2010).

\* \* \*

The parties agree that Danso met four out of the five requirements for safety-valve eligibility. The disputed fifth provision requires that

not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

18 U.S.C. § 3553(f)(5); see also U.S.S.G. § 5C1.2(a)(5). The last half of the provision, the entire "but . . ." clause, manifests the drafters' effort to address the anomaly presented by § 5K1.1 of the Sentencing Guidelines, which by requiring "substantial assistance" to the government tends to render small fry ineligible—they are likely to be relatively uninformed. See *Gales*, 603 F.3d at 52; *United States v. Shrestha*, 86 F.3d 935, 938 (9th Cir. 1996). Danso contends, as every circuit to address the issue has held, that the relevant information can be provided any time before sentencing, even if the defendant previously lied about it. See *United States v. Schreiber*, 191 F.3d 103, 106 (2d Cir. 1999); *United States v. Powell*, 387 F. App'x 491, 494-95 (5th Cir. 2010); *United States v. Mejia-Pimental*, 477 F.3d 1100, 1105-06 (9th Cir. 2007); *United States v. Brownlee*, 204 F.3d 1302, 1305-06 (11th Cir. 2000); *United States v. Tournier*, 171 F.3d 645, 647-48 (8th Cir. 1999); *United States v. Gama-Bastidas*, 142 F.3d 1233, 1242-43 (10th Cir. 1998); see also *United States v. Bermudez*, 407 F.3d 536, 543 (1st Cir. 2005) (assuming without deciding same); but see *United States v. Alvarado*, 326 F.3d 857, 862 (7th Cir. 2003) (reserving question whether "eleventh-hour cooperation immediately before the sentencing hearing begins will always be regarded as timely"). The government appears to acquiesce.

There is also no dispute as to what information Danso did and did not provide the government. The two primary pieces of information not disclosed and at issue on appeal are the same two identified by the government in its sentencing memorandum. The open question is whether those items qualify as "information . . . concerning the offense." We discuss each in turn.

*Non-Toure sample.* Danso did not dispute at sentencing, or on appeal, that he failed to provide the government with the identity of this sample's provider. Sentencing Tr. 28, App. 87. Rather, he argues that "there was insufficient evidence for concluding that Mr. Danso's conduct in relation to that sample was part of the conspiracy offense he was being sentenced on," Appellant's Br. 18-19, so that his naming the supplier wasn't essential to safety-valve eligibility.

Danso reads the district court's decision as relying on the fifth criterion's reference to information concerning the offense of conviction itself; i.e., he understands the court not to have classified the missing information as "concerning . . . offenses that were part of the same course of conduct or of a common scheme or plan" (the latter portion of § 3553(f)(5)'s opening clause). We agree. So Danso's argument that the sample played no role in the offense of conviction is relevant. The trouble for Danso is that the evidence contradicts his factual premise. Danso's factual proffer in support of his guilty plea explains that when Danso, the CW, and Toure met to negotiate the deal,

> Toure asked Danso if Danso had given his "sample" to the CW. Danso stated that he had given the CW a "sample," but not Toure's sample. Danso stated that he had told the CW that Toure's heroin is much better.

App. 28. See also Appellee's Br. 18. In short, Danso himself told the government that he used the other sample both directly and as a benchmark for proclaiming the superiority of Toure's drugs. So the sample was integrally linked to the offense of conviction, and Danso's acquisition of it "concerns the offense." Thus we think the case falls comfortably within the range of cases denying safety-valve treatment for a defendant who declines to identify his supplier, see, e.g., *Gales*, 603 F.3d at 53-54, even though ultimately the sample in question was not part of the direct "chain of distribution" from Toure to the CW, see *United States v. Tate*, 630 F.3d 194, 202 (D.C. Cir. 2011).

Danso's most analytical argument is that because it would have been consistent with the proffer for him to have given the sample to the CW before the onset of the conspiracy, it follows that such conduct was not "part" of the offense. Appellant's Br. 18, 21-22. But given that Danso *used* the sample for marketing the Toure supply, information about its acquisition "concerned" the offense. In fact, information about many acts or circumstances might "concern" an offense but not be a "part" of it in any legal sense. If the government asked a bank robber how he got access to the getaway car, and the truthful answer were an (innocent) friend or a car-rental agency, the information would still "concern" the offense.

*Toure sample.* The district court also found that Danso "[did] not rebut that he refused to answer any question about whom he gave the Toure heroin sample to." Sentencing Tr. 29, App. 88. Danso does not contest the propositions that Toure gave him the sample for the purpose of recruiting customers and that, when asked to whom he gave the sample, "[h]e refused to answer that question." Sentencing Tr. 26, App. 85. On appeal Danso in effect invokes the rule of trial practice against questions that assume a fact not in evidence (the most infamous example being, "When did you stop

beating your wife?"). He points out that "no evidence was ever presented or referred to to indicate that Mr. Danso had ever given the sample to anyone." Appellant's Br. 24. True enough. But Danso offers nothing to support the idea—which flies in the face of common sense—that he could not have responded by truthfully telling the government agents his actual method of disposition, whatever it may have been: transferring it to a third party, dropping it into a river, hiding it under a stone. He gives no reason to think the government's framing of the question precluded a truthful response slightly beyond its literal wording.

Apart from that, Danso's argument about the Toure sample adds nothing to what we just considered in relation to its converse.

In sum, we find that both the identity of the non-Toure supplier and what Danso did with the Toure sample are pieces of information that concerned his offense of conviction; his providing them to the government on request was thus essential to safety-valve relief. Thus we need not consider the government's arguments that Danso's responses (or non-responses) to other questions supplied additional bases for rejecting the safety valve. Danso's omission of the above items clearly represented a failure to provide "all information . . . concerning the offense."

\* \* \*

The judgment of the district court is

*Affirmed*.